CAROLINE WOOD, guardian, complainant, and ALICE C. PRICE, defendant and respondent,

v.

JACOB C. PRICE, appellant.

[Argued March 21st, 1911. Decided November 28th, 1911.]

1. "An act respecting notice of lis pendens (Revision of 1902)" (P. L. 1902 p. 477), took origin in order to eradicate the injustice of the rule of the old law, which was that, during the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute so as to affect the rights of his opponent.

2. The omission to file and record the statutory notice under the act of 1902 (P. L. 1902 p. 477) left the parties free to deal with the subject-matter of the litigation untrammeled, and one acquiring an interest therein pendente lite is unaffected by the litigation, provided his acquisition was made bona fide and without notice of equities.

3. This statute (P. L. 1902 p. 477) does not deal with the rights of persons who had notice, either actual or constructive, of equities which would bind or charge their rights.

4. Possession of real estate which is actual, open and visible occupation, inconsistent with the title of the apparent owner by the record and not equivocal, occasional, or for a temporary or special purpose, is constructive notice to all the world of the rights of the party in possession.

5. This rule also includes those equities of one who occupies as tenant, that are connected with the tenancy, as well as interests under collateral agreements, as a contract to convey the land, or to renew the lease.

6. The possession of premises by a tenant is constructive notice, not only of such tenant's rights and equities, but as well notice of those of the landlord.

7. The provision for the endorsement of a writ of sequestration contained in the act of 1907 (P. L. 1907 p. 482 § 26) is for the benefit of the person against whom the writ is directed, and if it lack such endorsement, until application be made by such person to set it aside, it is not wholly void, but merely voidable.

On appeal from a decree of the court of chancery made by the chancellor, whose opinion is reported ante p. 1.

*Messrs. Vreeland, King, Wilson & Lindabury,* for the appellant.

*Mr. Charlton A. Reed,* for the respondent.

The opinion of the court was delivered by

VOORHEES, J.

The opinion written for the court of chancery by the learned chancellor has the approval of this court, and but for the stress in argument and in the briefs filed on appeal upon points which were not particularly treated in it, it would be quite unnecessary to add in any way to the careful exposition of the principles therein set forth. A restatement of the facts is, of course, uncalled for.

The argument is made that a suit for alimony is a personal action and results in a personal decree for the payment of money, therefore, to sustain it, service of process upon the defendant within the territorial limits of the state, is requisite to give the courts of such state jurisdiction to render such judgment. *Elmendorf* v. *Elmendorf, 58 N. J. Eq. (13 Dick.) 113; Hervey* v. *Hervey, 56 N. J. Eq. (11 Dick.) 424.*

It is also further contended that the employment of the writ of sequestration in order to compel an appearance, pursuant to section 26 of the Divorce act (*P. L. 1907 p. 482*), at once *ipso facto,* renders the suit a proceeding *in rem,* or *quasi in rem.* This was the view entertained by the court of chancery.

The defendant, however, further argues from this premise that the suit, having thus become an action *in rem,* the land being the *res* which is proceeded against, the suit, from the time of issuing the writ of sequestration was thereby transformed into a "suit relating to or affecting the possession of or title to lands or real estate," and so falls directly within the purview of "An act respecting notice of *lis pendens* (Revision of 1902)" (*P. L. 1902 p. 477*), which act provides that

"neither the issuing of a  * * * subpœna or other process or writ nor the filing of a  * * * bill  * * * nor any proceedings had or to be had thereon  * * * shall be deemed or taken to be constructive notice

to any *bona fide* purchaser  *  *  *  of any lands or real estate to be affected thereby until the complainant  *  *  *  shall have first filed  *  *  *  a written notice of the pendency of such suit."

Conceding for argument's sake, the correctness of the reasoning, and that the action, by the employment of the writ of sequestration and the filing of the preliminary petition for it, has been transformed from an action *in personam* into one *in rem*, as distinguished from a personal action, commenced by subpœna, but wherein sequestration had been resorted to merely by way of mesne process, for some incidental purpose, the fallacy of the proposition lies in the misconception of the general doctrine of *lis pendens*, and of the distinction existing between that doctrine and the doctrine of notice.

Our statute, above cited, while it uses the words hereinbefore quoted, as to "constructive notice," yet a consideration of the purposes for which it was enacted will demonstrate that it took origin in order to eradicate the injustice of the old law.

Although many judicial deliverances, as well as text-writers, have stated that the doctrine of *lis pendens* is referable to the doctrine of notice, that view has by the best authority been denied, and, as stated by Professor Pomeroy, in his *Equity Jurisprudence,* section 633, the rule is, "during the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute so as to affect the rights of his opponent."

In this state, this view has been adopted. Vice-Chancellor Pitney, in *Houpt* v. *Turner, 53 N. J. Eq. (8 Dick.) 526,* examined and collated many authorities on that subject and recognizes the rule above set forth, and, continuing, refers to the reason which led to the adoption of the statutory notice of *lis pendens* in the following language:

"The manifest hardship of applying this necessary maxim in cases of conveyances in good faith to parties without notice led to a statutory provision for the public registry of a notice."

While this case was formally overruled (*55 N. J. Eq. (10 Dick.) 593*), yet not upon this point, and the doctrines enunciated by the learned vice-chancellor have not been by it at all repudiated. *McMichael* v. *Webster, 57 N. J. Eq. (12 Dick.) 295* (at *p. 300*), sets forth the reasons for the reversal. Indeed, this

court, in *White* v. *White, 61 N. J. Eq. (16 Dick.) 629*, refers approvingly to the case. So that, what our statute really did, not only in effect, but in words, for it is limited in its scope to any *bona fide* purchaser or mortgagee, &c., was to abrogate the rule, that parties to a litigation could not alienate the property in dispute as against the rights of the opposing parties to such suit.

It made the recording of such notice necessary in order to preserve the former effect of the litigation. So, that the result of omitting to file and record the statutory notice under the act of 1902, left the parties free to deal with the subject-matter of the litigation untrammeled, and one acquiring an interest therein *pendente lite* is unaffected by it, provided his acquisition was made *bona fide* and without notice of equities.

It will thus be clear that the statute did not at all deal with the rights of persons who had notice, either actual or constructive, of equities which would bind or charge their rights.

The old rules, under which the litigation itself was made to limit the rights of parties acquiring interests in the subject-matter were changed by the statute above cited, unless the statutory notice was recorded.

Having now disposed of the effect of the *lis pendens* act, and shown that it does not apply to persons who do not acquire interests in the subject-matter *bona fide,* we must look to the situation of the parties and discover whether there was notice, either actual or constructive, to the purchaser of the property.

Jacob C. Price had purchased the premises at the foreclosure sale on October 8th, 1908. The equity of redemption had been conveyed to him by the mortgagor, his brother, in August previous, pending the foreclosure suit. Before that, the writ of sequestration had been issued and served. Now, Doctor Price took the deed without the signature of the wife, whom he knew to be entitled to dower, subject to payment of the mortgage. He was, therefore, put upon inquiry as to the rights of the wife, at least, so far as her strict dower interest was concerned.

He was also put upon inquiry as to the lien of the writ of sequestration, by reason of the open, notorious and exclusive possession of the tenant of the property, and it is conceded that so far as the tenant's rights were concerned, he was chargeable with

notice of whatever rights the tenant had to remain in the property, and which the tenant could enforce against it.

All authorities are agreed that the general rule is that possession of real estate which is actual, open and visible occupation, inconsistent with the title of the apparent owner by the record and not equivocal, occasional or for a temporary or special purpose, is constructive notice to all the world of the rights of the party in possession.

This agreement of the authorities also extends to include those equities of one who occupies as tenant that are connected with the tenancy, as the contents of and the covenants contained in the lease, and as well to interests under collateral agreements, as a contract to convey the land, or to renew the lease, &c. *Taylor* v. *Stibbert, 2 Ves. Jr. 437; Daniels* v. *Davison, 16 Ves. 249; Allen* v. *Anthony, 1 Mer. 282; Barnhart* v. *Greenshields, 9 Moo. P. C. C. 18; Le Neve* v. *Le Neve, 2 Lead. Cas. Eq. 187.*

In the court of chancery, Chancellor Runyon, in *Havens* v. *Bliss, 26 N. J. Eq. (11 C. E. Gr.) 363,* says: "If a tenant has even changed his character by having agreed to purchase the estate, his possession amounts to notice of his equitable title as purchaser."

Now, it is the duty of a purchaser to inquire of the person in possession of the premises and ascertain the rights under which he holds, and if this duty of inquiry be disregarded, the purchaser is chargeable with notice of such facts as the inquiry, if it had been in fact made, would have revealed. *2 Lead. Cas. Eq. 188; Holmes* v. *Stout, 10 N. J. Eq. (2 Stock.) 419, 426; Havens* v. *Bliss, supra; Essex County National Bank* v. *Harrison, 57 N. J. Eq. (12 Dick.) 91.*

Where the possession is that of a tenant, the authorities are conflicting as to the extent of the notice flowing from such occupancy.

The English rule is that "the occupation of land by a tenant affects a purchaser of the land with constructive notice of all that tenant's rights, but not with notice of his lessor's title or rights." *Hunt* v. *Luck (1902), 1 Ch. 428,* where the English cases are reviewed. Under this authority, a purchaser is charged with notice of those rights which a tenant might enforce, but not with

constructive notice of the rights of some other person to whom the tenant pays rent.

This rule, in some of the American states, has been followed, · but Professor Pomeroy, in his *Equity Jurisprudence,* says:

"Another and more numerous group of decisions by the courts of various states, hold that a purchaser, by means of a lessee's possession, is put upon inquiry respecting all the rights and interests under which the tenant holds, and which affect the property, and is therefore charged with constructive notice of the lessor's title and estate."

He concludes that the latter rule may be regarded as the American doctrine. Section 625, where the author has collected the cases. See, also, sections 615, 616, 618.

This subject does not seem to have been passed upon by this court. There are, however, in the court of chancery cases which approach the question.

In *Havens* v. *Bliss, 26 N. J. Eq. (11 C. E. Gr.) 363,* Chancellor Runyon, writing the opinion, says:

"It is true there are to be found cases in this country in which the notice which possession gives is confined to a known title under which the possessor holds, but the rule is, and I see nothing to take this case out of its operation, that the occupancy of land is equivalent to notice, to all persons dealing with the title of the claim of the occupant. If a tenant has even changed his character by having agreed to purchase the estate, his possession amounts to notice of his equitable title as purchaser. *2 Sugd. Vend. & P. (11th Am. ed.) 543; Daniels* v. *Davison, 16 Ves. 254.* In *Baldwin* v. *Johnson, Saxt. 441,* the language of Lord Rosslyn, in *Taylor* v. *Stibbert, 2 Ves. Jr. 440,* is quoted ·with approbation, and applied to a case where a mortgagee had taken her mortgage on land, the legal title to which was in the mortgagor, but was subject to a trust in favor of another person, of which the mortgagee had no knowledge or information. The tenants of the mortgagor were in actual possession of the property. The court held her bound to inquire of them as to the title. The language of Lord Rosslyn, above referred to, is: 'It was sufficient to put the purchaser upon inquiry, that he was informed the estate was not in the actual possession of the person with whom he con-

tracted; that he could not transfer the ownership and possession at the same time that there were interests as to the extent and terms of which it was his duty to inquire.' "

The same learned chancellor, in *Wanner* v. *Sisson, 29 N. J. Eq. (2 Stew.) 141*, denies the character of a *bona fide* purchaser to one who had notice of the claim of persons in possession, and says: "If they were tenants or had notice of the claims of those under whom they claim, the rule is that the occupancy of land is equivalent to notice to all persons dealing with the title of the claim of the occupant. If a tenant has even changed his character by having agreed to purchase the estate, his possession amounts to notice of his equitable title."

In *Essex County National Bank* v. *Harrison, 57 N. J. Eq. (12 Dick.) 91*, Vice-Chancellor Pitney declared "that the effect of the constructive notice due to possession is a notice of everything which a party interested in the premises would get by inquiring of the party in possession. In other words, the actual possession of the premises puts any person having a claim or seeking to acquire title thereto, to an inquiry of such person as to what his title actually is."

It seems that to give to a tenant's possession the effect of notice of his landlord's title is the more reasonable conclusion. The possession of a tenant is the possession of the landlord. The origin and reason for the contrary doctrine are not made clear in the English cases, and although the learned judge who delivered the opinion in *Barnhart* v. *Greenshields, supra,* reviews the cases, not one of them referred to, discusses this exact question, and his examination of them concludes:

"There is no authority in these cases for the proposition that notice of a tenancy is notice of the title of the lessor; or that a purchaser neglecting to inquire into the title of the occupier is affected by any other equities than those which such occupier may insist on. Whatever authority there is upon the subject is the other way."

Now, an inquiry of a tenant of necessity would result in being informed of the landlord under whom the tenant occupied, and whose possession it was that the tenant held, and through whom

the latter must assert whatever right he claims to retain the premises.

To limit, therefore, the effectiveness of the inquiry merely to the rights of the tenant, is to deprive the notice of practical and beneficial usefulness to a purchaser, a result which must have been originally intended in the beneficent design for his protection, at the foundation of the doctrine.

As Chief-Justice Field of California says, in the well-considered case of *Dutton* v. *Warschauer, 21 Cal. 609,* in discussing the subject: "It is not easy to give to the fact of possession any influence as notice without making it notice of all such matters as a prudent. man, desirous of purchasing the property, would naturally inquire about respecting the title. Ascertaining that the possession of the occupant is that of a tenant, he would, in the ordinary course of things, proceed to inquire as to the title of the landlord."

*Dickey* v. *Lyon, 19 Iowa 544,* contains an instructive examination of the question, and concludes: "It seems to follow therefore that if the possession of a tenant is notice of his lease and its contents, as the authorities uniformly concede, it must necessarily become notice of the fact that the landlord claims title and holds possession adverse to the proposed purchaser's vendor, and having notice of such fact, he cannot become a good-faith purchaser of the estate."

Another case which deals with the subject, exhaustively and satisfactorily, is *Randall* v. *Lingwall, 43 Ore. 383,* in which the same result is attained.

The text-books generally also regard this as the more logical and generally-accepted conclusion. *Wade Not. (2d. ed.)* § *286; Fett. Eq. 85; Eat. Eq. 141,* and it is so held in the greater number of the states of the union. They have been collected in *23 Am. & Eng. Encycl. L. 501,* and also in the notes to *Crooks* v. *Jenkins, 124 Iowa 317,* as reprinted in *104 Am. St. Rep.* (at *p. 348*).

We conclude, therefore, that the possession of premises by a tenant is constructive notice, not only of such tenant's rights and equities, but as well notice of those of the landlord.

From an examination of the case, it appears that Guerin, the

tenant, originally had a lease made in February, 1904, and duly recorded, for a term of two years, with a privilege of renewal for three additional years, and an option to purchase at any time during the demised term, and that he was in the open and actual possession of the premises.

The fact that the term had expired at the time of the transfer to Jacob C. Price takes the case out of the rule that there is no obligation to inquire when the possession is not inconsistent with the record title, a question alluded to in *Gardom* v. *Chester, 60 N. J. Eq. (15 Dick.) 238, 245.*

The tenant's occupation was not then necessarily under this lease as disclosed by the record. It was, at the best, uncertain. Besides, the character of the tenant's occupation had changed, for he had before the transfer of title attorned to the sheriff under the writ of sequestration, and of such change, as we have before pointed out, the purchaser had constructive notice.

In executing the writ, Guerin was notified by the sheriff, in writing, dated August 5th, 1908, to attorn and pay to the sheriff arrears of rents and rents growing due for the property, so that the tenant, for he paid the sheriff afterwards on the 24th of August, $156.50 as rent, became a tenant of the sheriff by virtue of the command of the writ.

The books say that a sequestration out of chancery is more effectual than an execution at law, and binds from the time of awarding the commission and not from the time of executing it. *1 Vern. 58.* Here execution of the writ antedated the deed. It is therefore unnecessary for us to hold that sequestration binds before its execution.

The sequestrators, formerly seven in number, were officers of the court, and to act from time to time as the court should direct and account to the court for moneys received. Motion might be made and an order obtained for tenants to attorn and pay their rents to the sequestrators or for a sale and disposition of the goods of the party, and when the sequestrator is in possession, he cannot be disturbed without leave of the court. *9 Ves. 336.*

Under the authority of the writ, the sequestrators may enter into possession of real estate in the occupation of the disobedient person, and may also enter into the receipt of the rents of such

estates as are in occupation of tenants. Upon entering into the real estate, they should serve the tenants in possession with a notice to attorn to pay their rents to them. *3 Ves. 22, 24.* If the tenants refuse to attorn, the proper course is to obtain upon notice to the tenants an order to attorn and pay the rents. *6 Jac. Dict., tit. "Sequestration;" 8 Bac. Abr., tit. "Sequestration;" 2 Dan. Ch. Pr. 1054 et seq.*

The petitioner's duty was to make inquiry of the tenant, and therein he failed. He is, therefore, chargeable with notice of the facts which he would have learned had he pursued such inquiry, not only as to the tenant's title, but as to all the facts and circumstances which the tenant knew concerning the title, and especially concerning the right in which the person in possession was occupying the premises, and that would have led to notice of the execution of the writ, the attornment of the tenant to the sheriff, and that the property was then *in custodia legis.*

It is argued that the appeal book does not show that the writ was endorsed according to the statute. To make this available, it should clearly appear that such was the fact.

The point does not seem to have been raised in the court below and is not mentioned in the opinion of the chancellor. If, however, it be conceded that the writ lack such endorsement, yet it will be noted that no application was made by Robert A. Price, against whom it issued, to set it aside for that reason, and it may be that, if such application had been made by him, under the rule laid down in *Jernee* v. *Jernee, 54 N. J. Eq. (9 Dick.) 657,* the relief would have been granted, but until such application was made, the writ was not wholly void against him, but, at the most, merely voidable.

The provision for the endorsement was intended to operate for the benefit of the person against whom the writ was directed. The process did not deprive the defendant of his liberty, as was the fact in the case just cited. The defendant, instead of appearing to the suit, has rather defied the process of the court, has not appeared, has not claimed the benefit that the endorsement of the writ would have given him, and cannot therefore claim that he has been harmed.

If the writ was voidable in his favor, it is not perceived how

Jacob C. Price, the petitioner, can reap any benefit from that fact, until it has been vacated.

The decree of the chancellor will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, BOGERT, VROOM, CONGDON—9.

*For reversal*—None.