Complainant's bill is for maintenance, under the statute, for herself and two children of the marriage between herself and defendant, and for custody and possession of one of said children now in the custody of defendant, and as ancillary and antecedent to the main relief, to have declared null and void a decree of divorce obtained by defendant in the courts of Illinois, to have defendant enjoined from setting up such decree, and to have him commanded to endeavor to have the Illinois court set aside its decree.
The answer sets up the Illinois decree, denying the allegations that it was obtained by fraud or that the Illinois court lacked jurisdiction; it also denies the allegation of his abandonment of complainant, and sets up laches.
In addition, defendant challenges the right or status of complainant to maintain her bill under the allegations of the bill (and the proofs at the hearing) on the authority of Floyd
v. Floyd, 2 N.J. Adv. R. 638. This first issue, it seems to *Page 108 
me clear, must needs be decided against defendant. The situation in the instant case is entirely different from that in the FloydCase.
In that case the complainant husband, a resident of Pennsylvania, filed bill in New Jersey for an adjudication that a decree of divorce obtained by the wife in Nevada was null and void because fraudulently procured. This was the primary and sole relief sought; it was a direct attack on the validity of the Nevada judgment, not ancillary or collateral to a different cause of action or defense. On complainant's own averments the matrimonial domicile was in Pennsylvania. The parties had lived there as husband and wife until the wife wrongfully left him without his consent. The court held that the legal domicile of the wife was still that of the husband; that the matrimonial domicile was Pennsylvania; that the proceeding was one solely seeking to deal with or affect the matrimonial status considered as a res, and that the complainant had no status in this state to entitle him to ask the courts of this state to entertain such a suit.
The opinion, however, expressly recognizes and affirms (at p.642) the right and power of the courts of this state to relieve against fraudulent judgments or judgments of tribunals lacking jurisdiction, "whenever they are sought to be made the foundation of an action or defense."
The present bill is not one seeking to deal with or affect the matrimonial status as a res. It is a bill for maintenane, which is an action in personam. Hervey v. Hervey, 56 N.J. Eq. 424
(at p. 428); Cf., also McGuinness v. McGuinness, 72 N.J. Eq. 381.
(We are, of course, in nowise concerned here with the question of a maintenance suit as quasi in rem as regards property of the defendant, where commenced by sequestration.Wood v. Price, 79 N.J. Eq. 1; affirmed, 79 N.J. Eq. 620.) The Illinois decree is attacked, not directly, but because it is sought to be made the foundation of a defense. It is immaterial that New Jersey was not the state of matrimonial domicile at the time of the separation of the parties, or at the time of the Illinois decree. Being a personal *Page 109 
action, it must needs be brought in the state where the husband is located. The husband was served here, and, admittedly, resides here, and has appeared and defended generally.
That this court has jurisdiction of the proceeding, as a suit for maintenance, is not challenged, nor could it be, successfully. It has jurisdiction over the persons, as has been noted; assuredly it has also jurisdiction over the subject-matter, for the bill alleges (and, concededly, if defendant and complainant are still husband and wife, there has actually been) an abandonment and refusal to support, as specified by the statute. Moreover, if this, indeed, be requisite, the abandonment and refusal to support were acts committed by the husband in this state, being acts continuing during the period of his actual residence here. In Freund v.Freund, 71 N.J. Eq. 524; affirmed, 72 N.J. Eq. 943, the parties were domiciled in New York; the husband deserted and came to New Jersey; the wife later discovered he was residing here, and, herself still a resident of New York, filed bill for maintenance in this court and was awarded decree. These facts are identical with the case at bar.
Having thus jurisdiction of the main cause, this court has also jurisdiction of the secondary question as to the validity of the Illinois decree interposed as a defense. Fairchild v.Fairchild, 53 N.J. Eq. 678; Floyd v. Floyd, supra.
It appears that complainant has made application in the Illinois courts to set aside the decree in question, and it is argued by defendant that such step deprives this court of jurisdiction. Not so. The present suit was commenced before the pending application in Illinois, and, even if the contrary were true, it would not deprive this court of jurisdiction, but merely afford ground for motion to stay proceedings or final decree until the final determination of the prior proceeding.Fairchild v. Fairchild, supra (at pp. 681, 682).
It seems to me that the disposition of the present case must needs be in accordance with the opinion of Vice-Chancellor Backes in Thompson v. Thompson, 89 N.J. Eq. 70, *Page 110 
wherein are fully set forth the authorities, as well as the principles, involved. New York was the last matrimonial domicile; Illinois was never the state of matrimonial domicile, neither did the Illinois court have jurisdiction over the person of the wife. The decree, therefore, is not entitled to recognition in this state under the provisions of the federal constitution. Neither is it entitled to recognition on the ground of comity, for it is clear that the alleged jurisdiction of the Illinois court was not obtained "in substantial conformity with the requirements imposed by the legislature on this court in acquiring jurisdiction in such cases."
It appears by the decree that the divorce was granted for the same cause of desertion. In such case it is a jurisdictional requisite under our statute that petitioner shall have been abona fide resident of this state for the two years next preceding the commencement of the action. By the husband's own testimony he moved to New Jersey in June, 1916, after the separation in New York, stayed here until July, 1917, when he moved to Detroit, where he lived until July, 1918, at which time he went for the first time to Illinois, although he kept rooms for his son Morton and Laura Tunis in Detroit. It is clear, therefore, that there was not, either actually or approximately, a two years' residence of any kind by him in Illinois to support a decree granted November 20th, 1919.
I think the decree is invalid for fraud and lack of jurisdiction on other grounds as well. It would appear from the face of the decree to be a jurisdictional requisite under the laws of Illinois that the complainant shall have been a resident for over a year next prior to filing his complaint. As heretofore noted, he was not even colorably a resident of Illinois prior to July, 1918; he was a resident of Detroit. He does not say, nor is there anything to show, that when he went to Chicago in July, 1918, he intended Illinois as his residence. Quite the contrary; he went to Chicago only because he was transferred there by his superiors in the quartermaster's department; he still maintained the home for his son in Detroit, as I have said; he went or was transferred *Page 111 
back to Detroit, November 11th, 1918; on November 16th, 1918, he executed an agreement with his wife, wherein he described himself as "Arnold Fried, of the city of Detroit, State of Michigan;" and, most cogent of all, on November 23d 1918, he filed a bill for divorce against his wife in the courts of Michigan, alleging himself to be a resident of Michigan, and to have been such for two years prior thereto, and swore to the allegations. It is perfectly obvious that, as a resident of Michigan on November 23d 1918, he could not have been a resident of Illinois for a year prior to commencing the Illinois suit, wherein decree was granted November 20th, 1919; that the Illinois court, therefore, did not have jurisdiction under its own statutes, and that the finding by the Illinois court that it had jurisdiction could only have been made as the result of fraud by the complainant (the present defendant).
The explanation he gave before this court is edifying, but scarcely adequate: "I can keep a residence in two different states as far as that's concerned."
It may be further noted that the record in the Illinois suit shows that he there testified that he had lived continuously in Chicago since July 2d 1918, whereas he here admits that he lived in Detroit for several weeks in November, 1918. He further testified in the Illinois suit that he had not seen either his wife or children since seven months after January, 1917; had tried to find them but could not; whereas the truth was, as he now admits, that he took the son to Detroit with him in July, 1917, and kept the boy until November, 1918, and that he saw his wife in November, 1918, and again in May, 1919, when she came out and successfully contested the Detroit divorce suit.
I find no ground to support the defense of alleged laches.
The custody of the son, Morton, is also an issue between the parties, and is a part of the relief prayed by complainant. Strictly, this would seem to be the subject of a separate cause of action, coming not within the statute as to maintenance (2Comp. Stat. p. 2038 § 26), but under the act concerning minors (2 Comp. Stat. p. 2810 § 20), and should have been *Page 112 
so pleaded. The matter has been fully tried and argued, and complainant may have an order to amend her bill accordingly.
The boy is now fourteen years old. Under the pendente lite
order of this court the custody was given to the father, in whose actual possession the son was at the commencement of this action, and with whom he at the time desired to remain. Later, his attitude changed, and he ran away to his mother in New York. Although he was, subsequently, returned by her, his dissatisfaction remained. While I do not believe all of his stories as to neglect and improper treatment by the father, I am satisfied that it is not for the boy's best interest that he remains in the father's custody. He has become highly nervous and entirely beyond the father's control, resulting in his suspension from school, and his later commitment by the Monmouth common pleas to the State Home for Boys.
There are other circumstances all tending to the same end. The father, admittedly, has no religious faith or affiliations. His false swearing in the Michigan and Illinois proceedings has been noted. He is living with Laura Tunis, with whom he went through the ceremony of marriage in Indiana immediately after the Illinois decree, admittedly, because, by the law of Illinois, he could not remarry for a year after the decree. They have a child now about two or three years old. The result of the finding of invalidity as to the Illinois decree, upon the relationship between defendant and Laura Tunis, is obvious. That a meretricious relationship existed between them in Keyport in 1917, and, later, in Detroit and Chicago, is, doubtless, not proven, but there is ground for grave suspicion, in view of the "Dear Sweetheart" note (Exhibit C2 of October 22d), and the perjury which I am constrained to find was committed by both in their denials of the authorship or receipt of that note. Comparison of the handwriting in this note and its address, with that of the postal cards admittedly written by her, leaves no room for doubt that they are the work of the same person. The same result is reached by comparison with the samples written by *Page 113 
her under cross-examination, the same characteristics are plainly evident even in the back-hand writing, while the obvious attempt at disguise by the change of slant, in the writing in court, itself affords additional ground for certainty.
By the Detroit agreement of November 16th, 1918, defendant gave the boy to the mother's care and custody, and to pay her $25 a month for his support. That situation continued (although the payments ceased after five or six months) until shortly before the filing of the present bill, when the defendant took the boy while the latter was visiting in Keyport. In 1920 complainant procured an order for $12 per week for the support of both children, from a court in New York, which defendant paid for, at least, two years.
The wife, it is true, is a resident of New York and the husband of New Jersey. But the husband's continued residence in New Jersey, judging from his past history, could not be relied on, and in view of the fact that he is not "the suitable person who should have custody of the child for its best welfare," section 10 of the act concerning minors, as amended (P.L. 1921 p. 205), does not preclude the award of custody to the wife. Neither does section 7 of that act (P.L. 1902 p. 263), for the boy is not a native of New Jersey, has not lived here five years, and does not object to going to New York. Moreover, bond may be required of the wife, conditioned for her compliance with the orders and decrees of this court in the premises.
There is conflicting testimony as to the attitude of the mother toward the care and custody of the children prior to 1917, but she has had the daughter ever since then, and the son since 1918. It appears that the daughter, who is sixteen or seventeen years old, is now working, and receives $12 per week; she is boarding with complainant's sister, paying $7 a week. Complainant formerly earned $25 a week, but now averages only about $8 a week.
By the Detroit agreement of November 16th, 1918, the wife, "in consideration of receiving the child Morton, * * * hereby releases and discharges the said Arnold Fried from all claims of whatsoever kind, nature or character against *Page 114 
him." It also recites a declaration of intention by both parties not to live with each other in future, but to part forever.
This release cannot be held a bar against future action for maintenance. An agreement between husband and wife is binding only to the extent that it is just and fair. Hollingshead v.Hollingshead, 91 N.J. Eq. 261 (at p. 278), and cases cited. The fairness of this agreement may well be doubted, considering that the release clause was obviously imposed by the husband, a husband who had deserted his wife in New Jersey and gone to Detroit, taking the boy with him and keeping him from the mother for more than a year, as a condition to her having the boy. Moreover, it was speedily broken by the husband, for he paid the $25 per month for only five or six months, and within a week after making the agreement filed his bill in Michigan praying for the custody of both children, and, on the dismissal of that bill, sought and obtained decree in Illinois giving him the custody of both children, and later, in New Jersey, took the boy and refused his return to the mother.
(I have said the husband deserted the wife in New Jersey. The wife and her sister Mrs. Jacobs, and Mr. Rothenburg, originally a friend of the husband, but whose sympathies are now with the wife because of the husband's conduct, all testify to efforts in January, 1917, to have him establish a home for his wife and children, and his refusal. The husband's denial is of no weight, in view of his proven lack of credibility.)
The declaration of intention by the wife not to live with the husband might be a factor for consideration on the question of abandonment, if there were no proof of subsequent change of intent. It might well be doubted that the declaration, under the circumstances, would be held to amount to consent to separation and non-support (Cf. Power v. Power, 66 N.J. Eq. 320), but, at any rate, there is proof of a later different attitude of mind. There is the fact of her going to Michigan to contest the divorce suit as soon as she received notice. When the Michigan suit was dismissed her husband's *Page 115 
attorney said defendant wanted to come live with her, and she said that if he would give up Laura Tunis he could come to her or she would come to him. There are also the proceedings later brought by her against her husband in New York for support for herself and her children, before she knew of the Illinois decree or the second marriage.
The decree will award the custody of the boy to the wife, and the sum of twelve dollars ($12) a week, of which half shall be deemed for the support and maintenance of the wife and half for that of the boy.