31 N.J. Super. 139 (1954)
105 A.2d 863
FLORENCE DILLS FIELD, PLAINTIFF-RESPONDENT,
v.
GEORGE C. FIELD, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1954.
Decided June 11, 1954.
*141 Before Judges CLAPP, FRANCIS and SCHETTINO.
Mr. Robert D. Grosman argued the cause for the respondent.
Mr. Nicholas Conover English argued the cause for the appellant (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
The consolidated appeals in this cause were argued on November 3, 1953. At that time the conclusion was reached to await the decision of the Florida Supreme Court on a pending petition for rehearing in the divorce action between the parties. Accordingly the following unreported per curiam opinion was filed:
"These consolidated appeals bring up for review two orders entered in the Chancery Division respectively (1) dismissing defendant's petition to vacate all proceedings in the separate maintenance action brought by plaintiff (Docket M-702-51), and (2) denying defendant's motion to dismiss the complaint in plaintiff's matrimonial injunction action (Docket M-3903-51).
The parties were married in 1922, came to New Jersey to live in 1925, and have resided in Short Hills, Essex County, since 1940. On December 29, 1950 they, accompanied by plaintiff's personal maid, went to Florida for a vacation. The Short Hills house was left intact and ready for occupancy upon their return. All of the clothing and personal belongings of the parties remained there. Defendant's assets, consisting largely of negotiable securities, remained in his safety deposit box in the Millburn Bank, and other assets of value were left in New Jersey.
On or about February 25, 1951 plaintiff and the maid returned to Short Hills. Plaintiff alleges that this was done at defendant's request, that he made all necessary arrangements for the trip, including *142 a chauffeur and expense money, and stated he would rejoin plaintiff in the near future either at the Short Hills home or at their summer home in Union Springs, New York. He did not do so.
Plaintiff has continued to reside in Short Hills. Defendant remained in Florida and failed to support his wife. He returned to New Jersey briefly on two occasions; on the first trip he removed all his securities from his safety deposit box and on the second assaulted plaintiff and the maid. Defendant was subsequently indicted by the Essex County grand jury for criminal desertion of plaintiff and for assault. These indictments are still outstanding.
Plaintiff, claiming to be destitute, instituted a separate maintenance action and sequestered defendant's assets in New Jersey under N.J.S. 2A:34-24 to 26. Jurisdiction was obtained by publication and registered mail service of the complaint, annexed affidavits and order of publication on defendant in Florida. With full knowledge of the proceedings, he failed to appear or interpose a defense in the action.
Plaintiff then petitioned for alimony pendente lite. The petition and order to show cause were served on defendant by registered mail. On January 10, 1952 the Chancery Division entered an order directing the sequestrator to pay plaintiff $100 a week alimony and her attorney a $3,000 counsel fee, pendente lite. Soon after an order was entered appointing the sequestrator receiver of defendant's assets.
Final judgment in the separate maintenance action was entered February 19, 1952, directing the sequestrator and receiver to pay plaintiff out of monies then or in the future in his hands the sum of $300 a week from October 5, 1951, less payments theretofore made, and a counsel fee to her attorney of $7,500 in addition to the fee theretofore allowed. The attorney was later allowed an additional counsel fee of $500 out of the sequestered funds. (A report subsequently filed by the receiver shows that he realized $41,015.05 from certain assets; it was from these monies that he paid the support, counsel fees and other expenses.)
Within a month after this final judgment, and on March 21, 1952, defendant instituted suit for divorce against plaintiff in Florida, charging her with desertion on February 25, 1951. The complaint is in the usual form and alleges defendant's residence in Florida for more than 90 days immediately preceding the filing of the complaint. On April 9 plaintiff filed her complaint to enjoin defendant from proceeding with his Florida action or with any action relating to the marriage, except in the State of New Jersey. An order to show cause with a restraint against prosecution of the Florida suit was made on the same day, returnable April 18. Copies of the order and of the complaint were served upon defendant in Florida by registered mail. Defendant failing to appear upon the return day, the Chancery Division entered an order continuing the restraint until further order of the court, and this order was also served on defendant by registered mail, a copy being mailed to the judge of the court in which the Florida divorce was pending.
*143 Plaintiff appeared by independent counsel and filed an answer in the Florida action raising the issues of domicile and desertion. She personally went to Florida and challenged the jurisdiction of the court there, presenting a copy of the separate maintenance judgment entered against defendant. The matter was referred to a special master to take testimony. Extensive depositions were also taken. The special master found in plaintiff's favor; he concluded that she had not deserted defendant and recommended a dismissal of his suit. Exceptions were taken and on November 5, 1952 the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, entered an order reciting:
`1. That the plaintiff, George C. Field, Jr., has clearly established that he is a bona fide resident of the State of Florida and has resided in the State of Florida continuously for more than ninety days preceding the filing of his bill of complaint; and that the defendant appeared voluntarily and, therefore, the court has jurisdiction of the parties.
2. The exceptions to the master's report in which he held that the residence had been established, should be overruled.

* * * * * * * *
7. That the date of the desertion of the plaintiff by the defendant is clearly shown to have occurred on October 5, 1951, when she instituted an action in the Superior Court of New Jersey, Chancery Division, Essex County, No. M-707-51, at which time she clearly stated that her residence was New Jersey and not Florida where the plaintiff had established his residence.'
The order then went on to provide:
`It is, therefore,
ORDERED, ADJUDGED and DECREED
(a) That the plaintiff's bill of complaint be and it is hereby dismissed without prejudice to his right to institute such further action as he deems necessary.

* * * * * * * *
(e) That the plaintiff was a resident of the State of Florida at the date of filing of the complaint in this case and the court has jurisdiction of the parties.
(f) That the defendant deserted the plaintiff and that such desertion was willful and obstinate but it does not appear by the preponderance of the evidence that the said desertion was continuous for a period of one year prior to the filing of the bill of complaint and, therefore, the plaintiff's prayer for divorce is hereby denied. That the prayer of the plaintiff for alimony to the defendant and property disposition is hereby denied.'
On January 6, 1953 defendant filed his petition in the separate maintenance action praying that all proceedings be vacated by reason of fraud practiced by plaintiff upon the court and upon defendant, that plaintiff be required to account for all monies received under orders entered therein, and for other relief. An order to show cause containing restraints was entered the same day, plaintiff *144 filed answering affidavits, and on May 25, 1953 the Chancery Division judge entered an order vacating the restraints and denying defendant's petition. That order is now before this court for review.
On the strength of the Florida order defendant, appearing specially and solely for the purpose of contesting the jurisdiction of the Chancery Division, moved to dismiss the complaint in the matrimonial injunction action for lack of jurisdiction over his person. Affidavits in support and in opposition to the motion were filed, and on May 25, 1953 a second order, also here on appeal, denied the motion to dismiss.
Plaintiff appealed from the order entered in the Circuit Court in Florida. On July 31, 1953 the Florida Supreme Court filed its opinion which, after referring to the special master's recommendation that the husband's complaint in divorce be dismissed because he had not established statutory desertion, stated:
`When the matter reached the chancellor on exceptions to the master's report he decreed that the bill be "dismissed" and that prayer for divorce be denied for the lack of proof of one of the elements of the charge of desertion. We do not find sufficient disparity between the recommendation and the decree to warrant an exploration of the law on the points attempted to be raised. Obviously the appellant won the suit when the bill was dismissed regardless of the fact that the master thought no element of desertion had been established, the chancellor thought one had not been proved.'
Defendant petitioned the Florida Supreme Court for a rehearing and clarification of this paragraph, claiming that: (1) in the light of Stanton v. Stanton, Fla. 1952, 60 So.2d 273, the findings of the chancellor and his decree to the effect that Mrs. Field was guilty of constructive desertion would constitute sufficient disparity between the master's recommendations and the decree to warrant an exploration of the law on the points attempted to be raised; (2) the statements contained in the quoted paragraph are likely to confuse and mislead the Circuit Court as to the law of the case when Mr. Field files a new suit for divorce upon the expiration of the 12-month period from the date of the desertion established by the findings and decree of the chancellor; (3) when such a new suit for divorce is filed on the ground of desertion, the chancellor's findings and decree will constitute an estoppel by judgment; and (4) there should appear in said paragraph an unequivocal statement that the statutory 12-month period had not elapsed between the time of the beginning of Mrs. Field's desertion and the filing of her husband's bill of complaint, and therefore it was proper for the chancellor to dismiss the complaint.
Defendant urges on this appeal that the Florida court had determined that the marital domicile was in Florida and that plaintiff deserted her husband on October 5, 1951; that the Florida order is binding upon the parties and entitled to full faith and credit; that the complaint in the injunction action should therefore have been dismissed; that plaintiff had practiced fraud upon the court and upon her husband in the separate maintenance action and therefore *145 all proceedings in that action should have been vacated because of this fraud and because of the effect of the Florida order.
Should the Florida Supreme Court determine, upon the petition for rehearing, that the special master was correct in his findings and recommendations and that Mr. Field had failed to prove his wife deserted him, the appeal now before us will be critically affected. Such determination  that Mrs. Field was not the deserting party  will certainly influence this court's approach to the husband's attack upon the separate maintenance proceedings. A complete determination of this appeal must await the decision of the Florida Supreme Court on the petition for rehearing. We should not dispose of the matter before us in piecemeal fashion. The matter is not ripe for final determination.
We do not, therefore, at this time pass upon the points raised by the appellant, nor upon the propriety of the several orders and judgments entered in the Chancery Division. On the coming down of the decision of the Florida Supreme Court on defendant's petition for rehearing we will hear reargument on the effect to be given to the determination of that court."
It now appears upon reargument that on November 6, 1953, the Florida Supreme Court rendered its decision in the matter. 68 So.2d 376. In the course of the opinion it said:
"Section 65.04, Fla. Stats. 1951, provides that `No divorce shall be granted unless one of the following facts shall appear: * * * (7) Willful, obstinate and continued desertion of complainant by defendant for one year.' The statute contemplates and requires that the deserting shall be `willful, obstinate and continued' for one year and refers to such desertion as one fact, just the same as it does to the other eight grounds specified. In all such cases where desertion is charged the determination of the time such desertion (actual or constructive) took place is necessary only for the purpose of ascertaining whether it has been `willful, obstinate and continued' for one year. All four factors must affirmatively be proven to establish the one fact. The failure to prove any single factor is fatal to proving the ground for divorce prescribed by law. [The ground of desertion can no more be divided into parts than can cruelty, impotency, intemperance or any other.]"
The bracketed portion was stricken from the opinion on December 10, 1953, by order of the court on a second rehearing.
The opinion continues:
"Therefore, when the lower court found that desertion had not been for the prescribed period of one year, it made a determination only that the plaintiff was not entitled to a divorce from the defendant. The decree entered `without prejudice' was not a final *146 decree in the sense that it determined the merits of the action. Such a qualified dismissal in equity is not an adjudication of the merits of the subject matter in controversy nor a bar to a new suit on the same cause of action. See Epstein v. Ferst, 35 Fla. 498, 17 So. 414; Brown v. Brown, 167 Tenn. 567, 82 [72] S.W.2d 557; Burton v. Burton, 58 Vt. 414, 5 A. 281; Note (1944) 149 A.L.R. 553, 564. The finding as to the date such desertion occurred and that defendant deserted the plaintiff were purely gratuitous and binding on no one. The whole purpose of the inquiry was whether grounds for divorce existed  not whether one or more facts constituting such grounds existed."
Thereafter a mandate was entered which provided that "the said order of the Circuit Court be and the same is hereby affirmed in part and reversed in part to the extent and as particularly set forth in the opinion and judgment of the Court * * *." The supplemental appendix presented to us contains the mandate but not the judgment itself.
The effect of the affirmance is that Field's action for divorce was dismissed and that no adjudication exists that Mrs. Field deserted him.
Thus we are brought to a consideration of the appellant's petition to vacate the separate maintenance judgment. The ground upon which the vacation is sought is that the jurisdiction of our Superior Court was invoked through the fraud of Mrs. Field.
The fraud is said to have consisted in:
(a) The allegation that her husband had abandoned her on or about February 22, 1951. This, it is charged, was false because the Florida Circuit Court on November 5, 1952 adjudged that she had deserted petitioner on October 5, 1951, the date on which her separate maintenance action was filed;
(b) Making the same allegation in her petition for alimony pendente lite;
(c) Alleging that she was destitute when she had certain enumerated assets.
From a factual standpoint the verified petition set out in detail the allegations of Field with respect to his wife's desertion, the facts with respect to the writ of sequestration, and the proceedings thereunder, the facts as to his Florida *147 divorce action and his wife's participation therein and, as recited above, the allegation as to the fraud of the wife here. Attached to it are copies of the pleadings and judgment in the Florida action.
Moreover, the petition dealt particularly with the claim as to his wife's assets and his own income and financial capacity.
Mrs. Field submitted an elaborate answering affidavit outlining in detail her factual statements as to the abandonment and failure to support, and the service of the complaint and order of publication upon Field in Florida. It contains also many references to the husband's testimony in Florida on the subject of the desertion and his financial capacity, and the excerpts from the testimony are attached as well. Likewise included are Field's 1949 and 1950 income tax returns and excerpts from the testimony of his accountant on the subject.
Following the charges of fraud, the petition then attacked the maintenance allowance of $300 weekly as excessive.
It is perfectly obvious at this juncture that there is no judgment of the Florida court declaring the wife to be the deserter. As a consequence, no basis for a finding of fraud in the invocation of the jurisdiction of our court is presented by grounds (a) and (b). And ground (c), which will be discussed later, furnishes no support for an attack on jurisdiction; it goes simply to the merits of the controversy between the parties as to the reasonableness and adequacy of the weekly award.
What is the effect of the petition to vacate upon appellant's status in the action? Prior to the filing thereof, the proceeding was one quasi in rem and the money award could be satisfied only out of the assets attached or sequestered in New Jersey. However, in our judgment the interposition of the petition constituted a general appearance and the judgment for maintenance is now in personam.
Jurisdiction of a court may be defined simply as the right or authority to adjudicate concerning the subject matter of a particular controversy. 14 Am. Jur., Courts, § 160, *148 p. 363. Existence of the authority to adjudicate in personal actions ordinarily requires consideration of two problems, jurisdiction over the subject matter and jurisdiction over the person of the defendant.
There can be no question of the jurisdiction of the Chancery Division over the subject matter of the type action involved here. Further, if appellant abandoned respondent and she established her own domicile in New Jersey, or even if she were a non-resident who had been abandoned by her husband and sought relief here because he had assets in this state or was here personally, the requisite authority or right to determine the maintenance action existed. Antonelli v. Antonelli, 16 N.J. Super. 439 (App. Div. 1951); George v. George, 20 N.J. Misc. 41 (Ch. 1941); Fried v. Fried, 99 N.J. Eq. 106 (Ch. 1926); Gasteiger v. Gasteiger, 5 N.J. Misc. 315 (Ch. 1927); Wood v. Price, 79 N.J. Eq. 1 (Ch. 1910), affirmed 79 N.J. Eq. 620 (E. & A. 1911).
It is fundamental that an in personam money judgment cannot be obtained against a defendant if he has not been served personally within the territorial limits of a court's jurisdiction, or if there is some basic defect in the manner of such service. However, this deficiency may be waived by a voluntary general appearance in the action. Such an appearance, except as modified by our present rules of practice, the effect of which will be discussed hereafter, is one whereby the defendant submits his person to the jurisdiction by invoking the judgment of the court on any question other than that of the jurisdiction over his person. As American Jurisprudence puts the applicable principle:
"Generally an appearance for any other purpose, at least one bearing substantial relation to the cause waives objections to the jurisdiction over the person of the defendant. A general appearance may arise by implication from the defendant's seeking, taking or agreeing to take some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff, other than one to contest the jurisdiction only." 3 Am. Jur., Appearances, § 3, p. 783.
And it may be noted as the prevailing rule in the majority of jurisdictions that an objection that the court is *149 without jurisdiction of the subject matter constitutes a general appearance. Annotation, 25 A.L.R.2d 833 (1952). This, we think, represents the sounder doctrine.
Under R.R. 4:4-6, which has no counterpart in the federal rules, a general appearance has the same effect as if the appellant had been properly served. This is simply a restatement of our old practice. La Fetra v. Beveridge, 124 N.J. Eq. 184 (Ch. 1938); State Board of Medical Examiners v. DeYoung, 4 N.J. Misc. 75 (Sup. Ct. 1926); McGuinness v. McGuinness, 72 N.J. Eq. 381 (E. & A. 1908); Polhemus v. Holland Trust Co., 61 N.J. Eq. 654 (E. & A. 1900).
The ordinary rule is recorded in 3 Am. Jur., Appearances, § 37, p. 806, as follows:
"* * * If a judgment has been entered without jurisdiction of the person of the defendant, the defect is cured if the defendant thereafter appears and participates in subsequent proceedings or invokes the action of the court for his benefit. * * *"
Annotation, 111 A.L.R. 925, 936.
The present rules of practice require "every defense, legal or equitable, in law or fact" to be asserted in the answer, except that certain defenses, such as lack of jurisdiction over the subject matter or over the person, may be made by motion before pleading. R.R. 4:12-2. It is also provided that these grounds are not waived by being joined with other defenses or objections in an answer or motion and that special appearances are abolished. So that now no special form is required for an attack on the jurisdiction over the person; nor is the objection lost by joining it with other defenses. But the objection of lack of jurisdiction over the person must be noted or in some way raised by the moving papers so as to preserve it. Otherwise it is waived. R.R. 4:12-8; cf. Trautman v. Higbie, 10 N.J. 239 (1952); Galler v. Slurzberg, 22 N.J. Super. 477, 485 (App. Div. 1952), certif. denied 11 N.J. 582 (1953).
As already indicated, the moving papers here are directed toward an attack on the basic merits of the maintenance judgment and exhibit no attempt whatever to preserve rights *150 arising out of original lack of personal jurisdiction. In fact, the single reference to appearance in the action appears in the recital of facts as follows:
"9. Petitioner has never been served personally in said action, nor has any appearance previously been entered on his behalf."
Then, after the 19-paragraph outline of the facts said to constitute the fraud on the court as to the abandonment and amount of the maintenance allowed, the relief sought is prayed for, namely, the vacation of "all prior proceedings, orders and judgments * * * by reason of the fraud of" Mrs. Field; that she "be adjudged disentitled to any further alimony or support or maintenance"; that the sequestrator be enjoined from making any further payment to her, and required to account; that she too be required to account for all moneys received from the sequestrator, and that appellant "have such other and further relief as may be agreeable to equity and good conscience."
The only conclusion that can be drawn under the circumstances is that appellant undertook to deal with the merits of the litigation and in some measure with the jurisdiction over the subject matter thereof, and that in doing so he submitted himself voluntarily to the jurisdiction of the court. Cf. McGuinness v. McGuinness, supra, 72 N.J. Eq. 381, 384, 385 (E. & A. 1908).
One of the purposes of the claim of fraud undoubtedly was to demonstrate that the matrimonial domicile of the parties was in Florida and that therefore jurisdiction over the subject matter was lacking. As already indicated, such objection constituted a general appearance.
So far as the attack on the factual basis of the wife's cause of action for abandonment and on her claim of New Jersey residence is concerned, whether considered from the standpoint of alleged fraud or as not being supported by the evidence, in our judgment the action of the trial court was sound both originally and on the application to vacate.
All of the matters presented to the trial court, namely, jurisdiction over the subject matter, the validity of the wife's *151 claim of abandonment, and the attack upon the excessiveness of the maintenance award, directly concerned the merits of the controversy. Consideration of them by the trial court constituted a hearing on the merits as required by McGuinness v. McGuinness, supra. As Chief Justice Gummere said there:
"I have no criticism of the rule which declares that a defendant who, in one breath, challenges the jurisdiction of the court in a pending suit, and, in the next, asks relief against the plaintiff on the merits in the same litigation, submits himself generally to the jurisdiction, for I can imagine no more potent act of submission by a party defendant in a pending suit than the asking that affirmative judicial action be taken in his behalf for meritorious reasons." 72 N.J. Eq. at page 384.
The appendix shows further that appellant was aware of the effect of absence of jurisdiction over his person and the consequences of an unqualified appearance in an action where in personam jurisdiction was not present. For as set forth above, in the injunction action appellant moved to dismiss the complaint "on the grounds of lack of jurisdiction over the subject matter and lack of jurisdiction over the person of the defendant." Also, in spite of Rule 4:12-2 and presumably for purposes of emphasis, the notice of motion said:
"In making this motion, we are appearing specially and solely for the purpose of contesting the jurisdiction of the Court, and without subjecting the defendant to the jurisdiction of the Court."
Appellant having entered a general appearance in the maintenance action, the trial court considered the matter on the merits on the basis of all of the supporting affidavits of the parties and other persons, parts of depositions used in the Florida proceeding, and other exhibits such as appellant's income tax returns, and declined to vacate the judgment. Study of the record satisfies us that his determination in that respect ought not to be disturbed. However, so far as it relates to the weekly support allowance, further consideration is necessary as will be demonstrated presently.
*152 As a result of the trial court's conclusion, the maintenance award is now an in personam obligation and no longer a special judgment. Moreover, the issue of abandonment without justifiable cause and refusal to maintain is likewise unqualifiedly res judicata. Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948); Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 1097, 92 L.Ed. 1429 (1948); Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938); Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951); Harding v. Harding, 198 U.S. 317, 25 S.Ct. 679, 49 L.Ed. 1066 (1905); Hubschman v. Hubschman, 140 N.J. Eq. 284 (E. & A. 1947); Morrissey v. Morrissey, 1 N.J. 448 (1949); Isserman v. Isserman, 11 N.J. 106 (1952). Specifically, the judgment conclusively establishes that the wife did not desert the husband down to the date thereof. Locher v. Locher, 112 N.J. Eq. 25 (Ch. 1932); Pitel v. Pitel, 90 N.J. Eq. 366 (Ch. 1919); Zanzonico v. Zanzonico, 14 N.J. Misc. 674 (Ch. 1936).
It is noted that the judgment does not set forth the date of the abandonment of respondent. The better practice is to include it. However, in the absence thereof the date alleged in the complaint must be regarded as controlling. Holst v. Holst, 101 N.J. Eq. 682, 683 (Ch. 1927).
Strenuous objection is made in the appellant's brief to the excessiveness of the support order of $300 weekly.
The wife alleged in her complaint that she had been told by Field repeatedly that his assets were valued at upwards of $650,000. His petition to vacate asserts their total value to be approximately $200,000, including those in the hands of the sequestrator. She swears he admitted making $50,000 in 1952 in the stock market on capital gains, aside from his dividends and other income. His 1949 and 1950 tax returns show $15,388.06 and $17,625.17 as income, but his affidavit says his net income for those years was $12,829.15 and $12,790 respectively, and for 1951, $27,775.94.
In this connection also, reference has already been made to the claim that respondent fraudulently represented that she was destitute. The charge is not quite accurate because her *153 complaint alleges that she "is practically destitute" except for a few shares of stock and a very small bank account. It does appear from her deposition in the Florida action that she had seven shares of Fidelity Union Trust Company stock, ten shares of Pillsbury Mills stock, a 1951 automobile, some furs, jewelry of unstated value, and a collection of dolls which was insured for $1,300. It is conceivable that a woman who had lived on the plane shown here would consider herself practically destitute, in spite of these assets, if her husband suddenly ceased supporting her.
However, if the income tax records accurately represent appellant's earnings, the allowance of $300 per week would take almost all of his income. For this reason we do not feel that the allowance aspect of the cause was sufficiently explored by consideration of the matter on the affidavits and other papers presented. It is our belief that full comprehension of the problem can be gained only by the taking of the testimony of the parties and their witnesses and studying all of the records and exhibits that may be offered.
Accordingly there will be a remand of the action in order to give the parties an opportunity to present their proof at an appropriate hearing, and to enable the court to review fully the reasonableness or excessiveness of the support order.
Appellant argues also that the counsel fee allowance of $750 is improper and that no fee at all should have been allowed in view of the excessive allowances already made in the proceeding.
It appears that the wife's attorney was granted a pendente lite fee of $3,000, a fee of $7,500 at final judgment, and another of $500 thereafter in connection with some phase of the sequestration proceedings. These fees totaling $11,000 were charged against a fund of $41,000 representing sequestrated assets. Although these allowances are not the subject of the present appeal, in total they are exorbitant for an ex parte suit of this character.
The matter now before us was not ex parte. It was presented and argued on petition, affidavits, depositions already in existence, and exhibits.
*154 Under all the circumstances a fee of $375 is adequate and the allowance of $750 is reduced accordingly.
There remains for consideration the motion to dismiss the complaint and injunction in the action brought to restrain appellant from proceeding with his then pending Florida divorce action.
As of this time the supplemental record shows that the husband's foreign action has been decided adversely to him and dismissed. Under ordinary circumstances, therefore, there would be no necessity to deal with the propriety of the injunction. The issue would be moot.
However, we observe that the relief sought by the wife goes beyond the then pending Florida proceeding and seeks an injunction barring the commencement or prosecution of any other suit to secure a divorce elsewhere than in New Jersey.
Manifestly if appellant is a bona fide resident of the State of Florida, he has the right to seek any relief there to which he is justly entitled. Stultz v. Stultz, 15 N.J. 315, decided May 3, 1954, reversing 28 N.J. Super. 446 (App. Div. 1953); Brown v. Brown, 28 N.J. Super. 165 (App. Div. 1953); Hubschman v. Hubschman, supra; 31 Am. Jur., Judgments, § 537, p. 147. The affidavits submitted by the wife are strongly persuasive that the original purpose in going to Florida was not to establish a residence. However, subsequent events as they can be gleaned from the affidavits on both sides suggest that the husband in fact may have acquired a residence there. Here, as in the case of the weekly support problem, we believe that a satisfactory determination can be made only after a full hearing at which all of the pertinent testimony on the subject can be offered for consideration by the court.
Accordingly, the denial of the motion to dismiss the injunction is reversed to the end that such hearing may be conducted.
For the reasons stated, the judgments are modified and the cause is remanded to be proceeded with according to the views expressed.