JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E. HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

CAROLINE WOOD, guardian, &c.,

*v.*

ROBERT A. PRICE et al.

[Decided July 29th, 1910.]

1. In a suit for alimony brought under section 26 of "An act providing for divorces and for decree of nullity of marriage, and for alimony and the maintenance of children" (*P. L. 1907 p. 482*), upon proof made in

1

accordance with that section, a writ of sequestration was issued requiring the defendant's estate, property and effects, and the rents and profits thereof, to be sequestered, to compel his appearance and the performance of any order or decree that might be made in the suit. The writ of sequestration was executed by actual entry upon the lands in question and delivery of a copy of the writ to the tenant in possession.—*Held*, that by the issuance of said writ and the actual execution thereof a lien was acquired upon the land in favor of the wife that took precedence over a title acquired by a subsequent purchaser from the husband.

2. Under section 26 of the Divorce act (*P. L. 1907 p. 482*), it is the legislative purpose to place in the custody of the law the *corpus* of the real estate, as well as the rents and profits thereof, where the defendant cannot be found within this state to be served with process, and to retain the property thus sequestered to compel either his appearance and the giving of a bond as provided in cases of *ne exeat*, or, if he does not appear, the enforcement of the decree out of the *corpus* of the estate and the rents and profits thereof.

3. Section 26 of the Divorce act (*P. L. 1907 p. 482*), in providing for a sequestration of the property of a non-resident defendant in a suit for alimony in order "to compel his appearance and performance of any decree or order which may be made in the suit," at the same time declares that where the defendant does not appear the decree shall be enforceable only out of and against the estate sequestered.—*Held*, the proceeding thus authorized is a proceeding *quasi in rem*, permissible under the construction of the fourteenth amendment to the federal constitution, established in *Pennoyer* v. *Neff, 95 U. S. 714.*

4. *McGuinness* v. *McGuinness, 72 N. J. Eq. (2 Buch.) 381,* distinguished.

5. Section 1 of the "Act respecting *lis pendens*" (*P. L. 1902 p. 477*), does not override the effect of an actual sequestration of real estate in an alimony suit against a non-resident.

6. Sections 44 and 46 of the Chancery act (*P. L. 1902 pp. 524, 525*) have reference to money decrees rendered *in personam*, and do not limit the effect of that section of the Divorce act which provides for a decree for alimony against a non-resident enforceable only out of the estate that has been sequestered for the purpose.

7. After sequestration of the husband's property in this state in a suit for alimony brought by the wife under *P. L. 1907 p. 482 § 26,* the husband brought an action for divorce in another state, and the wife, having appeared to make defence in that action, made application to the court there for alimony, expense moneys and attorney's fees to enable her to defend the action.—*Held*, that this application for alimony, being incidental to her defence to the divorce suit, was not to be deemed a waiver or abandonment of her alimony suit pending in this state.

On petition of Jacob C. Price for surplus money.

*Messrs. Vreeland, King, Wilson & Lindabury,* for the petitioner, Jacob C. Price.

*Mr. Charlton A. Reed,* for the defendant Alice C. Price.

PITNEY, CHANCELLOR.

The main cause was a suit tor the foreclosure of a first mortgage made by Robert A. Price and Alice C. Price, his wife, upon improved lands in Morristown. The parties defendant are Robert A. Price and wife, Anderson M. Guerin, tenant of the mortgaged premises, and Martha E. Struble, a judgment creditor of Robert A. Price. A final decree was made therein July 20th, 1908, providing for a sale of the mortgaged lands in order to pay to the complainant the amount of the mortgage debt with interest and costs, and to the defendant Struble the amount of her judgment and costs, and requiring the surplus money to be brought into court. Pursuant to this decree a writ of *fieri facias* was issued to the sheriff of Morris county on July 31st, 1908, and the property was duly sold on October 12th for an amount sufficient to satisfy the mortgage and judgment and yield a substantial surplus. The sale was confirmed by order bearing date October 26th, 1908.

The successful bidder was Dr. Jacob C. Price, a brother of the mortgagor. After the confirmation of the sale, but before the sheriff's deed had been accepted by the bidder, the latter filed his petition herein setting up that Robert A. Price, by deed of conveyance bearing date August 12th, 1908, and recorded in the Morris county clerk's office on August 20th, had sold and conveyed to the petitioner, Jacob C. Price, the mortgaged lands in question, by virtue of which sale and conveyance the petitioner claimed to be entitled to receive the surplus money, and prayed the court to make an order directing the sheriff to accept the petitioner's receipt as payment to that extent of the purchase-money. An order of reference was made to a special master to ascertain the truth of the allegations of the petition and make report thereon.

Mrs. Price, the wife of the mortgagor, who did not join in the deed to Jacob C. Price, appeared by counsel before the special

master, and afterwards before me, setting up a claim upon the
surplus money by virtue of her inchoate right of dower, and also
and especially by virtue of the sequestration proceedings pres-
ently to be mentioned.

In order to facilitate the determination of the matter, counsel
for the petitioner and for Alice C. Price consented that the tes-
timony taken before the special master should be returned to me
without the formality of a master's report upon the facts, and
the matter was then brought on to hearing before me upon the
testimony taken before the master and other testimony sub-
mitted to me in open court.

From the evidence it at once appeared that Alice C. Price, by
virtue of her inchoate right of dower, was entitled to have some
portion of the surplus money set apart to secure her dower in-
terest in the event of her surviving her husband. And it further
appeared that her claim to priority over the title of Jacob C.
Price by virtue of a suit that she had brought in this court
against her husband for alimony under *P. L. 1907 p. 26,* and in
which (the husband being out of the state) a writ of sequestra-
tion had been issued and executed upon the mortgaged lands
prior to the foreclosure sale, raised at least so serious a doubt of
Jacob C. Price's right to the proceeds of that sale that the ques-
tion ought not to be summarily decided before the conditions of
sale were complied with by the purchaser and the money paid
by him to the sheriff.

For these reasons Dr. Price, under advice of his counsel,
waiving so much of his petition as prayed that the sheriff might
be required to accept his receipt, paid the balance of the pur-
chase price to the sheriff in money, and the sheriff has paid into
court the sum of $5,260.34, which includes what is due to Mrs.
Struble upon her judgment and an overplus of approximately
$2,700, which latter is the subject-matter of the controversy as
between the petitioner and Mrs. Price.

In the determination of that controversy the following are the
important facts and dates:

Mrs. Price filed her bill for alimony against her husband on
July 27th, 1908. The defendant being then, and at all times
since, out of the state, and not to be found herein to be served

with process, the subpœna *ad respondendum* was returned *non est,* and upon proofs submitted to the court, an order was made on July 30th (under *P. L. 1907 p. 482 § 26*) that a writ of sequestration should issue against the said Robert A. Price, directed to the sheriff of the county of Morris, directing him to sequester the defendant's estate, property and effects within this state and the rents and profits thereof, to compel his appearance and the performance of any decree or order which might be made in that suit. The writ of sequestration was issued accordingly, tested August 1st, 1908, and delivered to the sheriff, who, on August 5th, entered upon the mortgaged lands in question and sequestered the same and the rents and profits thereof, and at the same time delivered to the tenant, Mr. Guerin, a copy of the writ. Guerin recognized the right of the sheriff under the sequestration by paying to him on August 24th the sum of $156.60 as rent for said premises. The sheriff returned with the writ a statement of what he did in execution of it.

An order of publication was duly taken in the alimony suit, followed by a decree *pro confesso,* and an order for proofs under which evidence was taken, and the case is now awaiting decision. Decision has been reserved pending the determination of the present controversy, because if it were found that Jacob C. Price is entitled to the proceeds of the sale of the land sequestered, there would be nothing beyond the small amount of rent just mentioned out of which to award alimony.

By deed dated August 12th, 1908, acknowledged in South Dakota on August 17th, and recorded in the Morris county clerk's office on August 20th, Robert A. Price undertook to convey the lands in question to his brother, Jacob C. Price, for "one dollar and other good and valuable considerations."

As already mentioned, the lands were brought to sale under the foreclosure on October 12th, and purchased by Jacob C. Price, the present petitioner.

On or about September 9th, 1908, Robert A. Price, who was in South Dakota, and claiming to be an actual and *bona fide* resident there, instituted an action against his wife in one of the courts of that state for a divorce. On October 9th a summons

in that action was served upon Mrs. Price at Morristown, in this state, where she was then and long before that had been residing. The wife filed an answer in the South Dakota action denying that her husband was then or had been for more than six months preceding the commencement of his action an actual resident in good faith of the State of South Dakota and domiciled therein as he had alleged, and averring that his actual residence was in New Jersey. The answer also denied the allegations of his petition upon which he based his claim for divorce, prayed that he be required to furnish her with means sufficient for her support and maintenance and with proper expense money to defend the action, and that his complaint be dismissed. On November 4th, the South Dakota court made an order requiring the plaintiff, Robert A. Price, to pay to the wife's attorneys $200 attorneys' fees, $50 for expenses in paying witnesses, notaries, &c., and also $10 a month as alimony to Mrs. Price, the first payment to be made on November 10th and subsequent payments on the 10th of each month following, during the pendency of the action or until the further order of the court. Robert A Price complied with this order to the extent of paying the $200 attorneys' fees, $50 of expense money and alimony for two months at $10 per month. The action came on to be tried on March 3d, 1909, whereupon the court, finding that none of the material allegations of the complaint were sustained by the evidence and that all the material averments of the answer were sustained, rendered judgment denying the husband's prayer for divorce, and dismissed his complaint on the merits and awarded costs to Mrs. Price.

The principal question now raised before me is whether by virtue of the writ of sequestration a lien was acquired upon the land that takes precedence over the title acquired by Jacob C. Price under the deed made to him by Robert A. Price. As already mentioned, the writ was executed on August 5th, while the deed is dated August 12th, and certainly was not delivered prior to its date.

The legislative authority for such a writ of sequestration originated in the Divorce act of 1902 (*P. L. 1902 p. 508 § 20*), and is now contained in section 26 of the act of 1907. *P. L. 1907 p. 482.*

In the Divorce act of 1874, the nineteenth and twentieth sections (*Gen. Stat. p. 1270*) provided for the enforcement of orders touching the alimony and maintenance of the wife and touching the care and maintenance of the children by the husband, by the sequestration of the defendant's personal estate and the rents and profits of his real estate. Similar process and for the like purposes was provided by sections 19 and 20 of the Divorce act of 1902. Thus far the reference was to suits *in personam.* To the twentieth section of the act of 1902 this new provision was appended, viz.:

"In cases where a husband cannot be found within this state to be served with process, his estate, property and effects within this state and the rents and profits thereof may be sequestered to compel his appearance and performance of any decree or order which may be made in the suit; but the process of sequestration shall be issued only upon special order therefor, to be made upon proof of the claim alleged in the bill, and that the defendant cannot be found within the state for the service of process; upon process of sequestration a bond as provided in cases of *ne exeat* may be given in discharge of the writ, and the sum in which the party shall give bond, with sufficient surety or sureties, shall be indorsed upon the writ in words at length; where the proceedings are by process of sequestration and defendant does not appear, the decree shall be enforceable only out of and against the estate sequestered."

Similar provisions are in sections 25 and 26 of the act of 1907.

Plainly it is the legislative purpose to place in the custody of the law the *corpus* of the real estate as well as the rents and profits thereof, where the defendant cannot be found within this state to be served with process, and to retain the property thus sequestered either to compel his appearance and the giving of a bond as provided in cases of *ne exeat,* or, if he does not appear, then to provide for the enforcement of the decree out of the *corpus* of the estate and the rents and profits thereof.

The proceeding is analogous to the familiar proceeding by foreign attachment in the common law courts. That it is within the power of the legislature to thus provide that the property of an absconding or non-resident husband situate within this jurisdiction shall be devoted to the support of his wife and children

admits, I think, of no question. This point will be dealt with below.

It is, however, argued that the sequestration was of no effect as against Jacob C. Price because, as alleged, he was a *bona fide* purchaser for value of the equity of redemption without notice of the sequestration.

I overrule this contention, first, because the actual execution of the writ of sequestration by the entry of the sequestrator amounted to a placing of the property in the custody of the law, which on familiar principles must be held to be constructive notice to all the world, and secondly, because it was clearly proved, and without dispute, that actual notice was given to the tenant in possession, Mr. Anderson M. Guerin; and a subsequent purchaser taking without making inquiries of Guerin must be held charged with constructive notice of what he would have ascertained if inquiry had been made, viz., that the writ of sequestration had been executed. Dr. Price was not safe in relying upon his previous knowledge that Guerin was in possession as tenant of Robert A. Price; he was bound to continue his inquiries down to the time that he took his title, or submit to be charged with notice of what he would have learned if such inquiries had been made.

It is next argued that no notice of *lis pendens* had been filed in the alimony suit at the time the deed from Robert to Jacob Price was made and recorded. The act respecting notice of *lis pendens* (*P. L. 1902 p. 477* § 1) provides that neither the issuing of a summons or subpœna, or other process or writ, nor the filing of a declaration or bill in any suit relating to or affecting the possession of or title to lands, nor any proceedings had thereon prior to final judgment or decree, shall be taken as constructive notice to any *bona fide* purchaser or mortgagee until a written notice of *lis pendens* has been filed in the office of the clerk or register of the county where the land lies. It is, I think, quite doubtful whether the pending suit for alimony is a suit relating to or affecting the possession or title of lands, within the meaning of this statutory provision respecting *lis pendens*. But whether so or not, Mrs. Price relies not upon the issuing of the

process but upon its execution by the open and notorious entry of the sequestrator upon the property. And, in my opinion, the section just referred to has no such force as to override the effect of the actual sequestration of real estate in an alimony suit against a non-resident.

Reference is next made to sections 44 and 46 of the Chancery act (*P. L. 1902 pp. 524, 525*), the former of which provides that no decree of the court of chancery shall as against any person not a party become a lien upon lands other than those specifically mentioned in the decree until an abstract of the decree shall have been filed in the office of the clerk of the supreme court; and the latter of which sections provides that after decree obtained it shall be lawful for the court to issue process for the sequestration of the real and personal estate of the defendant to satisfy the demand of the complainant in the decree specified. These provisions are found in a revision that concerns the general practice of the court of chancery. The context shows that they have reference to money decrees rendered *in personam.* They do not, I think, limit at all the effect of that portion of section 20 of the Divorce act of 1902 (enacted on the same day and re-enacted in 1907), which provides for a decree for alimony against a non-resident, enforceable only out of the estate that has been sequestered for the very purpose of compelling defendant's appearance and the performance of any decree or order which may be made in the suit.

It seems to me the plain object and effect of section 26 of the Divorce act is to impose a lien upon the defendant's real estate at the inception of the alimony suit, where defendant cannot be found here to be served with process, that this lien commences when the writ of sequestration is executed, and persists for the benefit of the wife until it has been discharged either by the order of the court or by the defendant's performance of the decree of the court. It is of course quite true that in ordinary cases a decree for alimony or maintenance is a judgment *in personam,* not to be obtained without service of process upon the defendant within the state. *McGuinness* v. *McGuinness, 72 N. J. Eq. (2 Buch.) 381.* The necessity for such service arises from the operation of

the fourteenth amendment to the federal constitution, as construed in *Pennoyer* v. *Neff, 95 U. S. 714,* but there is here no limitation upon the authority of the state to subject property within its jurisdiction to the payment of the debts or performance of the obligations of non-resident owners. As was observed by Mr. Justice Field in delivering the opinion of the court in the case just cited—*95 U. S.* (at *p. 723*) : "The state, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens; and when non-residents deal with them it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of the non-resident situated within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the state, there is nothing upon which the tribunals can adjudicate."

Section 26 of the Divorce act (*P. L. 1907 p. 482*) in providing for the sequestration of the property of a non-resident defendant in a suit for alimony in order to "compel his appearance and performance of any decree or order which may be made in the suit," at the same time declares that where the defendant does not appear, the decree shall be enforceable only out of and against the estate sequestered. This renders it a proceeding *in rem,* or *quasi in rem,* such as is permissible under the decision in *Pennoyer* v. *Neff.* The decree that was under consideration in *McGuinness* v. *McGuinness, 72 N. J. Eq. (2 Buch.) 381,* was made prior to the act of 1902 which established this mode of procedure. That decree, so far as it awarded alimony, was a decree purely *in personam.* The decision in the *McGuinness Case,* and the reasoning of the opinion, do not bear at all against the validity of a proceeding and decree *in rem,* such as I am dealing with.

The decision of Chancellor Zabriskie in *Vreeland* v. *Jacobus, 4 C. E. Gr. 231* (followed by the court of errors and appeals in *Hervey* v. *Hervey, 56 N. J. Eq. (11 Dick.) 424, 428*), to the effect that the conveyance of real estate before sequestration issued, although after the decree on which it is founded, is valid in the absence of *mala fides,* has no bearing upon the present question. Those cases had reference to decrees *in personam,* and the query was whether a sequestration out of chancery differed from an execution, so that any alienation made after the decree on which it was founded would be void. This query was answered in the negative. The present case is the very different case of a writ of sequestration both issued and executed prior to the alienation; the writ being issued prior to final decree, and issued by virtue of a valid enactment for the very purpose of rendering the final decree efficacious.

Finally, it is argued that the appearance and answer made by Mrs. Price in the South Dakota suit brought by her husband against her for a divorce was a waiver of her rights in New Jersey and an abandonment of her suit brought here for alimony. This argument is rested upon the ground that Mrs. Price was not entitled to relief in both jurisdictions at the same time; that she must elect between them; and that she elected to secure her rights in South Dakota.

Whether the bringing of an action *in personam* by Mrs. Price against her husband in South Dakota should be deemed an election to abandon her pending action *in rem,* or *quasi in rem,* to enforce the payment of alimony out of his property here, is a question that I do not feel called upon to consider.

For, as I read the record of the South Dakota divorce suit, Mrs. Price did not seek there any affirmative relief against her husband excepting only such as was incidental to the making of her defence to his action for divorce. The pleading filed by her purports to be an answer. It denies the allegations of her husband's complaint upon which his prayer for divorce was founded; it denies his alleged *bona fide* residence in South Dakota; avers that his residence is in New Jersey, and that he went to South Dakota for the sole purpose of obtaining a divorce

against her, leaving her destitute of means so that she would be unable to make any defence to the pretended action brought by him for divorce in the State of South Dakota. The answer then recounts the steps alleged to have been taken by the husband to place his property out of his wife's reach; avers that he is a man of means, and that his abandonment and desertion of her was without her consent and without any just cause. It concludes by demanding judgment as follows:

"(1) That the plaintiff be required to furnish defendant means sufficient for her support and maintenance and with proper expense money to defend this action; and also a sufficient amount to pay attorney's fees in defending said action for her;

"(2) That plaintiff's complaint be dismissed;

"(3) And for such other, further or different relief as defendant may show herself entitled to in equity and good conscience upon the trial of this action."

The prayer that plaintiff be required to furnish defendant with means sufficient for her support and maintenance seems to have been intended only to provide for her maintenance while defending the action. So it was construed by the parties and by the court. The answer, with accompanying affidavits, was made the basis of an application for an order that the plaintiff, Robert A. Price, be required to pay to the defendant "a reasonable alimony, counsel fees and suit money during the pendency of this action." The order of the court made thereon recited that application was made "for counsel fees, temporary alimony and expense money;" and the order provided for the payment of $10 per month only during the pendency of this action, or until the further order of the court. The final decree, after reciting that upon the trial it appeared that all the material averments of the answer were sustained by testimony, decreed that the plaintiff was not entitled to a decree of divorce as prayed for by him; that his complaint should be dismissed on the merits; and that the defendant should recover from him her costs to be taxed.

It is quite plain that Mrs. Price made no application for alimony in the South Dakota court except such as was incidental

to the making of her defence to the suit for divorce brought against her. Such an application cannot be deemed a waiver or abandonment of her alimony suit pending in this state.

No doubt the $20 that was paid to her under the order of the South Dakota court should be taken into consideration in determining how much should be allowed to her in her pending alimony suit, in the event of a final decree going in her favor. But this does not enlarge the present rights of Jacob C. Price.

Upon the whole, therefore, I conclude that by the writ of sequestration and by the execution of that writ as above mentioned, a lien was acquired upon the land in favor of Mrs. Price that has priority over the title acquired by Jacob C. Price under the deed made to him by Robert A. Price. The land having then been converted into money by a sale under judicial process for the satisfaction of an underlying encumbrance, Mrs. Price's lien is of course transferred to the surplus money. It results that the whole of the money paid into court by the sheriff (save what is due to the judgment creditor) must be treated as property sequestered in the alimony suit and be held to abide the event of that proceeding.

Besides this, it is conceded that Mrs. Price is entitled to have her inchoate right of dower protected in the usual way.

The application of Jacob C. Price to have the surplus money now paid to him as purchaser will therefore be denied, with costs, reserving, however, his rights as against all other parties than Mrs. Price, and his right to the fund or to so much of it as may remain, if and when her rights are terminated or otherwise disposed of.