208 N.J. Super. 612 (1986)
506 A.2d 789
INA ROSELIN, PLAINTIFF-APPELLANT,
v.
CHARLES ROSELIN, DEFENDANT-APPELLANT,
v.
MONSOOR A. ARAIN, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 4, 1986.
Decided March 17, 1986.
*614 Before Judges PRESSLER, DREIER and BILDER.
Appellants filed a joint brief pro se.
Richard W. Engelbart, attorney for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal in a post-judgment matrimonial proceeding challenging two orders entered by the Family Part, one entered on March 12, 1985 and one entered on March 28, 1985, both of which, in effect, confirmed prior orders of the court dealing with the marital residence.
The background of this controversy is set forth in our previous opinion in this matter filed on December 11, 1984 under docket numbers A-684-83T3 and A-4122-83T3. Suffice it to say that we there affirmed, among other dispositions made by the trial judge, his order of May 4, 1984, by which he directed defendant Charles Roselin to execute the contract for sale of the marital residence to Mansoor A. Arain. The contract had already been executed both by plaintiff Ina Roselin and Arain, the court having assured itself, by an up-to-date appraisal, of the fairness of the purchase price. We further point out that during the pendency of that appeal and in response to yet another enforcement motion brought by plaintiff, the trial *615 judge, by order entered on September 20, 1984, confirmed his direction to defendant to sign the contract.
The simple and indeed sad fact is that defendant does not want to either vacate or sell the marital residence and, therefore, has persistently refused to comply with any of the trial court's orders, including those which we affirmed. Arain, on the other hand, remains ready, willing and able to consummate the purchase and has been attempting to do so.
The events leading to this latest chapter of the controversy began on the very date our 1984 opinion was filed when defendant moved for vacation of the September 20, 1984 order "on the basis of new material." The new material was an offer by his sister, Millicent Roselin, to purchase the property for $2,500 more than the Arain contract price. The sister apparently is willing to permit defendant's continued residence. On December 21, 1984, plaintiff, who up to this point had actively sought the court's aid in consummating the Arain transaction, wrote to the trial judge joining in defendant's application. Her letter, in part, stated:
I am desperately trying to maintain a sense of balance in the midst of this grotesque nightmare I have been living thru for the past five years.
* * * * * * * *
I would like to add that my daughter Rita is now living with Charles. And both girls seem to be happy there. Rita moved in because the Electric Company shut off the electricity in their house.
Once again, I would be grateful if you will allow Millicent Roselin to purchase the house so this sad case can be over with some joy for me.
The trial judge dismissed defendant's motion without prejudice, pointing out to him that "since third parties are involved I will make no order unless they are, also, served with notice." On January 14, 1985, defendant renewed his motion, this time noticing Arain's attorney, who had been an observer of all prior proceedings, including the appeal and motions made to this court during its pendency. Plaintiff, still appearing pro se, filed a cross-motion joining in defendant's latest application. Both motions were denied by order entered on March 12, 1985, the first of the orders here appealed from. The court's letter *616 decision explained that it found "no legal basis for altering its ruling."
In the meantime, upon being noticed of defendant's January 1985 reconsideration motion, Arain moved for leave to intervene and for an order directing both defendant and plaintiff to execute the necessary deed in consummation of the contract. These motions were granted by order entered on March 28, 1985, the second of the orders appealed from by both plaintiff and defendant. We affirm both orders.
It needs hardly be said that the Legislature's enactment of the equitable distribution law by its 1971 amendment of N.J.S.A. 2A:34-23 effected radical changes in the financial consequences of divorce. The basic predicates of those changes were the creation of the concept of a marital estate and the empowering of the court to direct specific disposition of that estate in order equitably to divide the marital assets between the spouses irrespective of legal title, inter se, to those assets. Thus, as we said in Sisco v. New Jersey Bank, N.A., 158 N.J. Super. 111, 122 (App.Div. 1978):
Courts are now empowered in divorce proceedings to allocate marital assets equitably between the spouses, regardless of ownership. Painter v. Painter, 65 N.J. 196, 213 (1974). To that end the court may direct the sale of an asset and the distribution of the proceeds thereof between the spouses in such proportions as it deems fair in the circumstances. This applies as well to the marital home, irrespective of its ownership by the spouses, prior to the divorce judgment, as tenants by the entirety.
We have no doubt that in appropriate circumstances the court may not only direct a sale in general terms but may also direct that a recalcitrant party participate in a fair and reasonable sale proposed by the other party. See R. 4:59-2(a). The circumstances for such a direction were certainly appropriate here. The original judgment of divorce, which directed a sale and determined the respective rights of the parties to the proceeds thereof, was entered on June 14, 1982. During the course of the next two years, plaintiff repeatedly sought the assistance of the court in enforcing the sale order, which defendant continued to violate. He refused to vacate the premises, he refused to permit real estate brokers access to the *617 premises, and he permitted the premises to deteriorate, prejudicing its value and plaintiff's opportunity to realize the financial benefit of the court's equitable distribution scheme. It was she who finally found a purchaser willing, for a fair and reasonable price, to buy the property in circumstances which would have daunted less determined potential buyers. She executed the contract, thereby binding herself to its terms, and the purchaser did the same. The trial judge, having been fully apprised of all of these circumstances, exercised his discretion in an entirely appropriate manner by requiring defendant to participate with plaintiff in the sale. At that point an equitable conversion took place, and the buyer, consequently, was thereby accorded the legal rights of a contract purchaser.[1]Cf. Witt v. Witt, 165 N.J. Super. 463 (Ch.Div. 1979).
Insofar as legal obligations are concerned, it is too late for plaintiff to change her mind. She executed the contract. It is also too late for defendant now to say that he will abide by the 1982 judgment requiring the sale if he can sell to a person of his own choosing. Intervening rights of innocent third persons have arisen and cannot now be unilaterally nullified by either of the parties.
Obviously, we cannot countenance a rule which would permit unilateral abrogation of the rights of an innocent third party who undertakes to purchase a residence which is the subject of an equitable distribution order simply because one or both of the former spouses have changed their minds. When the former spouses are not acting in harmonious concert to effect the ordered sale of the residence  and this is likely to be so whenever, as is not unusual, one of them would prefer to remain in the residence  there is a sense of instability and uncertainty surrounding the projected sale which cannot but *618 discourage prospective purchasers from entering into the transaction. This adversely affects the marketability of the property which in turn prejudices both its value and the spouses' right and opportunity to realize that value. If a potential buyer who is willing to consummate the purchase despite the delays, uncertainties and expense engendered by the spousal controversy and the continued contumacy of one of them is not accorded the benefit of his bargain by enforcement of his contractual and judicially created rights, the marketability of all property subject to this kind of interspousal dispute would be so undermined as to make it virtually impossible to enforce any sale order entered as part of an equitable distribution scheme.
It is now almost four years since the original judgment was entered and two years since the intervenor executed his contract with plaintiff and obtained the benefit of the court's order requiring defendant to join in the transaction. His rights must be enforced. See R. 1:10-5. If defendant continues in his refusal, the trial judge, on the intervenor's motion, may consider such alternatives as appointment of a receiver to execute the necessary documents or the entry of a self-executing and recordable judgment conveying to the intervenor. See R. 4:59-2(a). And see N.J.S.A. 46:16-1.1.
The orders appealed from are affirmed.
NOTES
[1] The order directing defendant to sign the contract was tantamount to his actually having signed it since equity regards as done that which is required to be done. See Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408 (E. & A. 1943).