603 A.2d 127

DOROTHY DI IORIO, PLAINTIFF, v.
FRED DI IORIO, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Union County

Decided October 25, 1991.

*James P. Yudes,* for plaintiff.

*Jeffrey K. Epstein,* for defendant (*Wilentz, Goldman & Spitzer,* attorneys).

WHITKEN, J.S.C.

This matter comes before the court pursuant to a motion for *pendente lite* relief by plaintiff and a cross-motion by defendant to set aside a *lis pendens* filed by plaintiff, which defendant contends affects his ability to conduct his business since the *lis pendens* affects, not only the property owned jointly by plaintiff and defendant, but other business property held by defendant in his own name. Research fails to reveal

any New Jersey case that has decided the issue as to whether it is appropriate to file a *lis pendens* in a matrimonial action wherein the filing party seeks to protect his or her interest in real estate that may be subject to equitable distribution. To resolve this matter requires an examination of the law regarding both *lis pendens* and equitable distribution.

A.

*N.J.S.A.* 2A:15–6 entitled "Written Notice of Pendency of Action; Contents" provides as follows:

> In every action, instituted in any court of this state having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to affect the title to real estate or a lien or encumberance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or registrar of deeds and mortgages, as the case may be, of the county in which the affected real estate is situate, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.
>
> No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only.

Plaintiff contends that, since she seeks equitable distribution as to real estate owned by the parties, she is justified by the statute in filing the *lis pendens*.

It should be noted that a *lis pendens* is not appropriate if only money or damages are being sought. Real property must be affected.

The only New Jersey case this court has been able to locate discussing a *lis pendens* in a matrimonial action is *Wood v. Price*, 79 *N.J.Eq.* 1, 81 *A.* 1093 (Ch.1910), aff'd 79 *N.J.Eq.* 620, 81 *A.* 983 (E. & A.1911), which was a suit for alimony brought under the Divorce Act wherein a writ of sequestration was issued requiring defendant's estate, property and effects and the rents and profits thereof to be sequestered to compel the appearance of defendant and the performance of any order or decree that might be made in the suit. Although the case was decided based upon a writ of sequestration, the court stated:

It is next argued that no notice of *lis pendens* has been filed in the alimony suit at the time the deed from Robert to Jacob Price was made and recorded. The act respecting notice of *lis pendens* (*P.L.*1902 *p.* 477 § 1) provides that neither the issuing of a summons or subpoena, or other process or writ, nor the filing of a declaration or bill in any suit relating to or affecting the possession of or title to lands, nor any proceedings had thereon prior to final judgment or decree, shall be taken as constructive notice to any *bona fide* purchaser or mortgagee until a written notice of *lis pendens* has been filed in the office of the clerk or registrar of the county where the land lies. [79 *N.J.Eq.* at 8, 81 *A.* 1093]

In commenting on this argument, the court stated again at page 8:

It is, I think quite doubtful whether the pending suit for alimony is a suit relating to or affecting the possession or title of lands, within the meaning of this statutory provision respecting *lis pendens*. [*Ibid.*]

It should, of course, be noted that the above 1910 case was based upon a matrimonial claim seeking alimony at a time when equitable distribution was not a part of our law.

54 *C.J.S., Lis Pendens,* § 11 states at page 100:

Under some authorities, the doctrine of *lis pendens* has been held to apply in dissolution of marriage cases provided the property sought to be affected is described with particularity in the pleadings. Under other authorities, it has been held that injunction and not *lis pendens* is the appropriate remedy to prevent further transfers of disputed property, but it has also been held that a spouse may choose between either filing a notice of *lis pendens*, or seeking a temporary injunction. A notice of divorce action pending in a state other than the one in which the property is located, will nonetheless be valid when filed in the county in which the property is situated, as will a notice filed in a different county of the same state. [at 100]

The New York courts have taken conflicting positions regarding the use of a *lis pendens* in a matrimonial action. In *Pape v. Pape,* 39 *Misc.*2d 268, 240 *N.Y.S.*2d 501 (Sup.Ct.1963), defendant-husband brought an action to cancel a *lis pendens* which his wife had filed against his property and to cancel an instrument entitled a "declaration of intention" which his wife had recorded. The court held that the declaration of intention executed solely by the wife and referring to an agreement between the husband and wife that certain property was not to be transferred until their marital problems were solved could not serve as a basis to support the filing of a *lis pendens* where

the agreement had not been recorded or submitted to the court. The declaration of intention and *lis pendens* were ordered to be cancelled.

A review of the court's holding would seem to indicate that had the declaration of intention been recorded, it could have served as a basis of support for the filing of a *lis pendens* and it would thus appear that based on this decision under New York law a *lis pendens* is an appropriate remedy to a party seeking to make a claim as to certain marital property.

The New York courts, however, in *Gross v. Gross*, 114 *A.D.*2d 1002, 495 *N.Y.S.*2d 441 (1985) took the opposite view. In *Gross* an appeal was filed in a matrimonial action by plaintiff-wife from various parts of an order entered by the Supreme Court including an order that vacated a notice of pendency filed by the wife. The court, in commenting upon the notice of pendency filed against defendant-husband's residency held that same was properly vacated and stated:

> The filing of a notice of pendency is an extraordinary privilege available only if the judgment demanded *would* affect the title to, or the possession, use or enjoyment of real property. (*Chambi v. Navarro, Vives & Cia*, 95 *A.D.*2d 667 [463 *N.Y.S.*2d 218]; *Doar v. Kozick*, 87 *A.D.*2d 603, 448 *N.Y.S.*2d 56; CPLR 6501; see *5303 Realty Corp. v. O & Y Equity Corp.*, 64 *N.Y.*2d 313, 486 *N.Y.S.*2d 877, 476 *N.E.*2d 276). The fact that plaintiff may be entitled to an equitable distribution with regard to the residence does not give rise to such a privilege. Plaintiff's remedy to prevent any alleged fraudulent transfers was to seek an injunction against any further transfers of the disputed property. (See *Chachkes v. Chachkes*, 107 *A.D.*2d 786, 787, *supra*, 484 *N.Y.S.*2d 619; Domestic Relations Law § 234). In fact, such an injunction was granted. [495 *N.Y.S.*2d at 443]

In *Atlas Garage And Custom Builders, Inc., v. Joan C. Hurley*, 167 *Conn.* 248, 355 *A.2d* 286 (1974) the judgment creditor of defendant's former husband brought an action against the former wife to foreclose a judgment lien on real estate which formerly belonged to the former husband and which was passed to the former wife by judgment of divorce. The former wife filed a counter-claim alleging that the creditor's attachment and judgment lien should be removed as a cloud on her title.

The lower court entered a judgment for the creditor on the complaint and the counter-claim and the former wife appealed. The Supreme Court held that a certificate of attachment could not be used as a notice of *lis pendens* and that the creditor's judgment related back to its prior attachment which occurred after the wife's attachment, and that where the wife was allowed to attach her husband's real property to secure an alimony award and the court made an alimony award of $1 a year and granted the wife other relief by passing title to the real property to her, the title vested in her on the date of the judgment and did not relate back to the date of her attachment and her claim was therefore subordinate to that of the creditor.

While the above case was decided based upon an attachment, the use of *lis pendens* was discussed although the court specifically held that a certificate of attachment cannot be used as a notice of *lis pendens*. The court stated:

> As to the commencement of a divorce action, our civil procedure makes no provision for imposing a lis pendens but allows the making of an attachment whenever alimony is claimed. [167 *Conn.* at 252, 355 *A.*2d 286]

In support of her position, defendant-former wife had cited *Germania National Bank v. Duncan*, 62 *Okla.* 144, 161 *P.* 1077 (1916) and *Graham v. Pepple*, 129 *Kan.* 735, 284 *P.* 394 (1930) in which cases divorce actions had been instituted and neither of the wives attached their husband's real estate. The court in each case held that the institution of the divorce action created a *lis pendens* upon the realty of the husband thereby giving the wife a claim superior to claims of creditors made subsequent to the commencement of the divorce action.

The court specifically held that such is not the law in Connecticut and defendant had failed to demonstrate otherwise. The court then stated:

> The defendant here, having commenced her divorce action by an attachment of her husband's realty, cannot claim at the same time, as she does in her brief, that this also constitutes a lis pendens. As we have already shown, these two proceedings are separate and distinct, and by statute are intended to serve different purposes. [167 *Conn.* at 254, 355 *A.*2d 286]

Again, it must be noted that the claim in the Connecticut case was for alimony and not for equitable distribution.

In *Jones v. Jones,* 249 *Miss.* 322, 161 *So.*2d 640 (Sup.Ct.1964), which was an action to set aside a deed by which plaintiff's divorced husband had conveyed an undivided interest in realty to his mother, or in the alternative, to subject such interest in realty to a lien of judgment against him, the court referred to the Mississippi *lis pendens* statute which, in pertinent part, provides:

> When any person shall begin a suit in any court ... to enforce a lien upon, right to, or interest in, any real estate ... such person shall file with the clerk of the Chancery Court of each county where the real estate, or any part thereof, is situated, a notice containing the names of all the parties to the suit, a description of the real estate, and a brief statement of the nature of the lien, right or interest sought to be enforced.... [*Miss.Code Ann.* § 755 (1942)]

The court stated:

> The doctrine of lis pendens is that every person, including a stranger to the suit and whether bona fide or not, who acquires from a party to a litigation any interest in property real or personal during the pendency of a suit respecting a right, title or interest in such property takes subject to, and is conclusively bound by, the decree in such litigation.... [161 *So.*2d at 643]

In commenting upon the use of a *lis pendens* in a matrimonial action, the court continued at page 643:

> In the case of *Felder v. Felder's Estate,* 195 *Miss.* 326, 13 *So.*2d 823, this Court held that a wife's right to alimony constituted such an interest in her husband's real estate as would permit her to take advantage of the lis pendens statute to protect such interest. Moreover, where a wife obtains a decree for alimony (declared to be a lien on the land) she acquires a lien superior to a conveyance made after the filing of *lis pendens* notice. *See W.H. Gallaspy's Sons Co. v. Massey,* 99 *Miss.* 208, 54 *So.* 805. [*Ibid.*]

In *Clopine v. Kemper,* 140 *Colo.* 360, 344 *P.*2d 451 (1959), an action was instituted by plaintiffs to obtain an adjudication of the rights of all parties in certain real estate which the Clopine's allegedly acquired by deed from one Hazel Kemper. At issue was the validity of the filing of a homestead entry and a *lis pendens* which affected the real estate involved.

This suit was based upon an underlying cause of action entitled *Kemper v. Kemper,* 140 *Colo.* 367, 344 *P.*2d 449 (1959), wherein a summons was issued on July 2, 1954 in an action for

divorce brought by the husband in the Denver district court. On July 3, 1954 a notice of *lis pendens* was filed in Sedgwick County reciting that plaintiff, Arthur J. Kemper, sought a divorce from his wife, Hazel I. Kemper and "Also to have the Court decree a division of the property by an equitable determination of the property rights of the parties hereto, among which property is real estate now standing in the name of the defendant, Hazel I. Kemper. That said real property is described as follows: South one-half (½) of Section 24, Township 11 South, Range 44 West, Sedgwick County, Colorado."

The complaint further alleged that, during the period of the marriage, plaintiff and defendant had accumulated both real and personal property located both within and outside the State of Colorado which was in both their names. Plaintiff, in the divorce action, sought an award of an equitable share of both the real and personal property of the parties.

The *lis pendens* rule in Colorado, under which this case was decided, was enacted in 1953 and is designated Rule 105(f), R.C.P. Colorado and provides as follows:

> After filing any pleading wherein affirmative relief is claimed affecting the title to real property, a party may file in the office of the recorder of the county in which the property is situated a notice of *lis pendens* containing ... a description of the property in that county affected thereby; such notice shall from time to time of the filing ... be constructive notice to all persons acquiring any interest in or lien upon the property described in such notice from any grantor or from any source whatsoever.

The holding in *Clopine, supra,* germane to the matter before this court was set forth as follows:

> It is also urged by counsel for plaintiffs that the subject matter of the divorce action was the marital status of the parties and that the division of property was merely a collateral matter. Hence, it is argued that the divorce action was not the proper subject of a notice of *lis pendens*. In *Tinglof v. Askerlund*, 96 *Colo.* 27, 39 *P.*2d 1039, it was held that a notice of *lis pendens* which referred to a complaint seeking separate maintenance and an equitable interest in property is constructive notice as of the day the *lis pendens* notice is recorded. [344 *P.*2d at 454]

Thus, the Colorado Court determined that it was appropriate to file a *lis pendens* in a matrimonial action where separate

maintenance and an equitable interest in property was being sought.

In *Rumsey v. Rumsey,* 150 *Kan.* 49, 90 *P.*2d 1093 (1939), plaintiff-wife filed, among other things, a petition seeking alimony in which she described certain real estate belonging to her husband and specifically requested that her husband's interest in said real estate be allocated to her as alimony.

As a result of what plaintiff contended was a fraudulent conveyance of the property, she amended or supplemented her petition contending that, after the commencement of her action, three deeds from her husband were made to a third person.

The Supreme Court of Kansas, in ruling in favor of plaintiff-wife, held that the doctrine of *lis pendens* applied and that anyone who purchased the property during the pendency of the action would be bound by the judgment subsequently rendered therein. The court stated:

> Our *lis pendens* statute Section 60–2601 provides: 'When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title; but such notice shall be of no avail unless the summons be served or the first publication made within 60 days after the filing of the petition....' [90 *P.2d* at 1095]

The court went on to hold:

> The section applies to actions for divorce and alimony. It was so held in *Wilkinson v. Elliott,* 43 *Kan.* 590, 23 *P.* 614 Am.St.Rep. 158. The first paragraph of the syllabus reads: Where the wife files a petition asking for a divorce and for alimony, in which she definitely described certain real estate of the husband and prays that it may be set apart and decreed to her as permanent alimony, the doctrine of *lis pendens* will apply; and anyone who purchases such property during the pendency of the action will be bound by the judgment subsequently rendered therein. [*Ibid.;* Citations omitted]

An issue was raised as to whether the court had power to award specific real estate to plaintiff in an action for alimony. The court found that this question had been resolved in *Osman v. Osman,* 86 *Kan.* 519, 121 *P.* 327 (1912), where it was held that under the statutes of Kansas, real estate of the husband may be set apart to the wife in actions for alimony alone, as well as in actions for divorce and alimony. The Kansas *lis*

*pendens* statute is not limited to real property but also applies to personal property with the exception of negotiable instruments and articles of ordinary commerce which are sold in the usual way.

In *General Electric Credit Corp. v. Winnebago of New Jersey*, 149 *N.J.Super.* 81, 84–85, 373 *A.*2d 402 (App.Div.1987), the court held that the New Jersey *lis pendens* statute is to be liberally construed and applies to any action that affects title to real estate.

> Our statute providing for the filing of a notice of *lis pendens* was adopted to ameliorate the hardship involved in good faith conveyances where there was no notice of suit in the public registry. *Wood v. Price*, 79 *N.J.Eq.* 620, 622 [81 *A.* 983] (E. & A.1911). It was not adopted to limit the common law doctrine of *lis pendens* to situations where an existing lien exists. The express language, 'to affect the title to real estate,' negates even the suggestion of any such statutory purpose. [*Id.* at 85, 373 *A.*2d 402]

## B.

### *Equitable Distribution*

Regarding equitable distribution, *N.J.S.A.* 2A:34–23 provides, in pertinent part:

> In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such an award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage. However, all such property, real, personal or otherwise, legally or beneficially acquired during the marriage by either party by way of gift, devise or intestate succession, shall not be subject to equitable distribution.

It is clear that as a result of the concept of equitable distribution as we know it in New Jersey, all non-immune assets of the parties become subject to equitable distribution, and thus, each party has a potential claim as to the assets of the other. As stated by the court in *Roselin v. Roselin*, 208 *N.J.Super.* 612, 506 *A.*2d 789 (App.Div.1986):

> It needs hardly be said that the Legislature's enactment of the equitable distribution law by its 1971 amendment of *N.J.S.A.* 2A:34–23 effected radical changes in the financial consequences of divorce. The basic predicates of those changes were the creation of the concept of a marital estate and empowering of

the court to direct specific disposition of that estate in order equitably to divide the marital assets between the spouses irrespective of legal title, *inter se,* to those assets. Thus, as we said in *Sisco v. N.J. Bank, N.A.,* 158 *N.J.Super.* 111, 122 [385 *A.2d* 890] (App.Div.1978): 'Courts are now empowered in divorce proceedings to allocate marital assets equitably between the spouses, regardless of ownership. *Painter v. Painter,* 65 *N.J.* 196, 213 [320 *A.2d* 484] (1974). To that end the court may direct the sale of an asset and the distribution of the proceeds thereof between the spouses in such proportions as it deems fair in the circumstances. This applies as well to the marital home, irrespective of its ownership by the spouses, prior to the divorce judgment, as tenants by the entirety.' [at 616, 506 *A.2d* 789]

In *Hursey v. Hursey,* 284 *S.C.* 323, 326 *S.E.*2d 178 (App.Ct. 1985), the Court of Appeals of South Carolina held that where a husband had mortgaged the marital home to his mother prior to the entry of decree for either divorce or allocation of property, and the mortgagee recorded the mortgage before the actual divorce occurred, the validly recorded mortgage was prior in time to a subsequent judgment for equitable distribution in favor of the wife and the mortgage had priority.

In *Hursey,* Rudolph and Jean Hursey were married in 1948 and in 1959 and 1963, Margaret Hursey, Rudolph's mother, made loans to him totalling $38,000. Rudolph executed three promissory notes evidencing the loan obligations.

In 1977, Rudolph borrowed $45,000 from the First Federal Savings and Loan Association which loan was secured by a first mortgage on the marital home acquired after the marriage, title to which, however, was in the name of Rudolph Hursey alone.

On March 10, 1980, Jean Hursey filed a petition of divorce and requested equitable distribution of the marital property. On April 4, 1980, Rudolph Hursey gave his mother a mortgage on the marital home to secure the $38,000 obligation represented by the notes, which mortgage was recorded April 7, 1980. Jean Hursey obtained a divorce on February 19, 1981 at which time the family court reserved all questions concerning the disposition of the marital home.

Thereafter, Margaret Hursey, the husband's mother, instituted a foreclosure action in February 1982 and the master who

heard the matter determined that both Margaret Hursey and First Fidelity were entitled to foreclosure based upon Rudolph Hursey's default in the required payments and the master found that Jean Hursey, the ex-wife, was entitled to an equitable interest of $10,000 in the marital home as a result of her contributions as a homemaker spouse. The master recommended that the marital home be sold and the proceeds applied first, to payment of the costs and expenses of sale, second, to the discharge of the debt of First Fidelity, third, to satisfy Jean Hursey's equitable interest and last, to discharge the debt due Margaret Hursey.

The circuit court confirmed the decision of the master and held that a non-titled spouse has no lien or other charge against property of the titled spouse during the marriage and where the husband mortgaged the marital home to his mother, before the entry of a decree for either divorce or allocation of property and the mortgage was recorded before the date of the divorce, the validly recorded mortgage was prior in time to the subsequent judgment for equitable distribution ultimately granted in favor of the wife, and thus, the mortgage had priority.

Of significance in the issue before this court, however, is the language of the Court of Appeals of South Carolina regarding the status of a claim for a lien based upon equitable distribution. The court reflected upon the case of *Parrott v. Parrott*, 278 *S.C.* 60, 292 *S.E.*2d 182 (1982), wherein the South Carolina court had recognized, for the first time, the interest of a homemaker spouse in the property of the titled spouse based solely on homemaker services. The court indicated that they believed the circuit court's analysis, which was made within weeks of the *Parrott* decision reflected a common misconception as to the scope of the doctrine of equitable distribution which had been noted in *Rogers v. Rogers*, 98 *A.D.*2d 386, 390–391, 470 *N.Y.S.*2d 401, 404–405 (1983):

> While the concept of equitable distribution does not borrow the theory of a community property regime that a marriage is an economic partnership between the spouses [citation omitted] it is a mistake to suggest that equitable

distribution and community property are synonomous (see *Painter v. Painter,* 65 *N.J.* 196, 216–217, 320 *A.*2d 484, 494–495 (1974)). The basic premises of a community property system ... is that each spouse has a *present vested* undivided one-half interest in all property acquired during the existence of the marital relationship ... In stark contrast, under ... equitable distribution [laws], during the marriage, and absent any divorce action, each spouse retains sole interest in the property to which he or she has title and ... can dispose of it as he or she desires. [citation omitted] In a divorce proceeding, which triggers the right to equitable distribution, property acquired during marriage [is distributed].... [326 *S.E.*2d at 180; emphasis supplied]

## The South Carolina Court goes on to indicate:

Most jurisdictions addressing the nature of the concept of equitable distribution agree that equitable distribution does not purport to effect property rights during marriage but is implemented on divorce and then only when necessary to address economic injustice (citations omitted). Only if a person becomes a party to a proceeding for divorce ... does the [equitable distribution] statute even have potential relevance ... no change in property rights will occur except upon the entry of a judgment of allocation ... *Rothman v. Rothman,* 65 *N.J.* 219, 320 *A.*2d 496 (1974); *accord, Hofman v. Hofman,* 94 *Ill.*2d 205, 68 *Ill.*Dec. 593, 446 *N.E.*2d 499 (1983); *Kujawinski v. Kujawinski,* 71 *Ill.*2d 563, 17 *Ill.*Dec. 801, 376 *N.E.*2d 1382 (1978); *Interchange State Bank v. Riegel,* 190 *N.J.Super.* 139, 462 *A.*2d 198 (1983); *Bacchetta v. Bacchetta,* 498 *Pa.* 227, 445 *A.*2d 1194 (1982). [*Id.* 326 *S.E.*2d at 181]

The court then indicated that in interpreting the appropriate section of the South Carolina law and in defining the concepts of marital property and equitable distribution, it has held that equitable rights in marital property arise "upon divorce" and upon dissolution of the marriage and that the non-titled spouse has no lien or other charge against the property of the titled spouse during marriage.

The court went on to find that the non-titled spouse has at least two remedies to protect against or prevent dissipation of the marital property pending divorce. The non-titled spouse "may file a notice of *lis pendens,* or may seek a temporary injunction based on Section 15–55–20(10)." They also indicate that if there is evidence that the titled spouse conveyed marital assets in contemplation of divorce, an action may be brought to set aside the conveyance.

The use of a *lis pendens* to establish a priority as to marital property subject to equitable distribution was also discussed by

the Supreme Court of Oregon in *Hoyt v. American Traders, Inc.*, 301 *Or.* 599, 725 *P.*2d 336 (1986). In *Hoyt,* plaintiff-wife filed a petition for dissolution of the marriage in which petition she requested that the real property at issue, which was specifically described in her petition, be awarded to her as her sole and separate property. The complaint was filed on March 20, 1988 and the property in question had been owned by the husband and wife as tenants by the entirety prior to that date.

On April 26, 1980, the husband was served with a complaint in which defendant herein, American Traders, Inc., sought a money judgment against him. On July 16, 1980 a judgment was entered against the husband, which was registered on August 20, 1980 in Jackson County, Oregon. American Traders claimed a lien on the husband's interest in the real estate.

On April 27, 1981 a decree of dissolution of the marriage was granted and the wife was awarded, as her sole and separate property, all rights, title and interest in the described real estate. The decree specifically provided that it would operate as a deed of conveyance of that property.

The wife then filed a proceeding for declaratory relief against defendant, American Traders, in which she alleged that the doctrine of *lis pendens* applied and as a result of that and by reason of the decree of the court awarding all of the property interests to plaintiff, defendant, by the registration of the judgment, does not have a lien against the real property.

Defendant, American Traders, alleged that the doctrine of *lis pendens* did not apply and that they had a valid existing lien against an undivided one-half interest in the real estate, which lien was superior to the interest of the wife.

The Supreme Court of Oregon held that the wife's petition for dissolution constituted a *lis pendens* notice of her priority over liens subsequently created by the creditor's registration of the judgment against her husband and thus the lien was extinguished.

It must be noted that under Oregon law, the filing of a complaint in a suit, involving, affecting, or bringing into question, the title to or any interest in or lien upon real property itself provides the notice of the pendency of the action, if it contains the names of the parties, the object of the suit, and the description of the real property involved, affected or brought in question, and thus, a separate *lis pendens* is not required to be filed.

The Supreme Court of Oregon, citing *Black's Law Dictionary* (4 ed. 1968), indicated that the term *lis pendens* means "A pending suit" and usually refers to a doctrine or rule that "the filing of a suit concerning real property is notice to people who obtain an interest in the property after the commencement of the suit that they will be bound by the outcome of the suit." *Id.* at 1081.

The dissolution statutes in Oregon provided:

Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows: ...

(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances.... [*Or.Rev.Stat.* § 107.105(1)(e) (1979)]

The Oregon Supreme Court stated:

Without question, then, the filing of a petition for dissolution of marriage involving a claim for an award or division of real property is the filing of a suit in which the title or interest of the parties in real property is 'involved, affected or brought into question.' Under ORS 93,740, the filing of a petition for dissolution that specifically describes the real property and requests that the real property be awarded to a party would appear to give notice to "purchasers and incumbrancers, of the rights and equities in the premises of the parties filing the [petition]. [*725 P.2d* at 341]

The court goes on to indicate:

When the complaint herein was filed, the wife had a property right in the property as a tenant by the entirety. Beyond that, she had a claim under ORS 107.105(1)(e) (1979) to an equitable apportionment of the "real or personal property, or both, of either or both of parties." Under ORS 197.105(1)(e) (1979), there is a rebuttable presumption that both spouses have contributed equally to the acquisition of assets during marriage, regardless of whether such property is jointly or separately held. This provision is an evidentiary device to aid a court in balancing the equities of the spouses in a division of property pursuant to a decree of annulment, dissolution or separation. One purpose is "To

minimize the effect of the state of title on an asset acquired after marriage, so far as the division of property is concerned." *Engel v. Engel*, 293 Or. 207, 215, 646 P.2d [20] (1982). [*Ibid.*]

There thus seems to be ample authority to support the right of a matrimonial litigant to file a *lis pendens* upon the institution of the divorce action to protect their interest in property that may be subject to equitable distribution.

## C.

Having determined that under *N.J.S.A.* 2A:15–6, it is appropriate to file a *lis pendens* upon the filing of a complaint in a matrimonial action seeking equitable distribution, a determination must be made as to whether the *lis pendens* filed in this matter is proper. Defendant contends, as one of his arguments in support of his position, that the *lis pendens* should be vacated, and, while plaintiff herein has a claim for equitable distribution to some of the properties, she has no present claim to the title to separate property of defendant.

It is the opinion of this court that a *lis pendens* may be filed as to any property subject to equitable distribution, whether it be in the name of plaintiff, defendant alone, or the parties jointly.

As to any property not subject to equitable distribution, obviously the *lis pendens* should be vacated.

Defendant further contends that the *lis pendens* is deficient in that none of the mortgagee banks who have an interest in the properties subject to the *lis pendens* were named, and thus, based upon *Spyco, Inc. v. Demenus*, 226 *N.J.Super.* 482, 544 *A.*2d 904 (Ch.Div.1988), the *lis pendens* must be vacated. An examination of *Spyco*, however, indicates, that the facts therein are substantially different than the situation in this matter. *Spyco* involved a claim wherein a suit was instituted in the United States District Court against various defendants alleging, among other things, that Spyco and others had entered into a joint venture agreement for the acquisition

and development of tracts of land, and that Spyco, in violation of that agreement, had acquired title to those tracts in its own name and thereafter transferred the title to those properties to two other companies. Spyco took back a note and recorded mortgage as to each transfer.

In *Spyco*, plaintiffs sought to set aside the transfers or, in the alternative, to impose a constructive trust in favor of the joint venture and sought to cancel the mortgages given by Tinton Sixty, Inc. and Tinton Thirty–Five, Inc. to Spyco. Neither Spyco nor its principal were named in the district court action, and thereafter, plaintiffs in that suit filed with the Monmouth County Clerk two notices of *lis pendens* referencing the mortgages from Tinton Sixty, Inc. and Tinton Thirty–Five, Inc. to Spyco. The notices of *lis pendens* were not served on either Spyco or its principal and Spyco then filed an action in the Superior Court seeking to discharge the *lis pendens* alleging that the notice of a *lis pendens* against an interest of a party who was not named as a defendant was void and the trial court granted the application.

*Spyco* was thus a claim in which a *lis pendens* was filed directly attacking the validity of a real estate transfer and mortgage in which a party, Spyco, whose rights were directly being affected was not named as a defendant in the lawsuit and was not provided with statutory notice of the filing of the *lis pendens*. In the matter before this court, plaintiff has filed an action seeking, among other things, equitable distribution as to various pieces of real estate, including real estate acquired during the course of the marriage. No transfer of title is being challenged nor is there a challenge as to the title of any of the mortgages currently existing against the properties.

Defendant herein, had further argued at the time this motion was heard, that plaintiff is adequately protected in that the court has entered an order barring the parties from dissipating any of the marital assets and defendant has agreed to place in escrow any proceeds from the sale of at least one of the

properties. While such relief would ostensibly protect plaintiff, it does not provide the same security as does a *lis pendens* in that a party could choose to violate the court's order. An example of a similar situation is found in *Goldman v. Goldman*, 248 *N.J.Super.* 10, 589 *A.*2d 1358 (Ch.Div.1991), where despite a restraint against the alienation of the assets of the parties in any manner, defendant-husband used approximately $400,000 worth of marital funds, after the complaint was filed, in an effort to keep his business alive. While it was stipulated in *Goldman* that the use of these marital assets was not made in bad faith, this is merely an example of an instance where an order of the court, which defendant herein contends provides adequate protection, was violated to the detriment of the party in whose favor the order was granted.

In *United S. & L. Ass'n. v. Scruggs*, 181 *N.J.Super.* 52, 436 *A.*2d 559 (Ch.Div.1981) referring to *Chrysler Corp. v. Fedders Corp.*, 519 *F.Supp.* 1252, 1264 (D.N.J.1981) the court stated:

> As Judge Ackerman noted in *Chrysler*, the doctrine of *lis pendens* prevents a party to litigation from conveying the property in dispute in derogation of the potential rights of his opponent in the land and in obstruction of the administration of justice. 519 *F.Supp.* at 1260. Filing a notice of *lis pendens* serves as constructive notice to the world that an action involving real property is pending, so that any subsequent purchaser or lienor of that property will take subject of the litigation. *N.J.S.A.* 2A:15–7; *Wendy's of So. Jersey, Inc. v. Blanchard Management Corp.*, 170 *N.J.Super.* 491, 496, 406 *A.*2d 1337 (Ch. Div.1979). [181 *N.J.Super.* at 54, 436 *A.*2d 559]

In *United S. & L. Ass'n*, Judge Dreier goes on to indicate that once a notice of *lis pendens* is filed, it may not be discharged under the statute except as a result of plaintiff's failure to prosecute the action diligently, the passage of three years from the date of the filing, final judgment in favor of defendant, defendant posting a bond sufficient to secure plaintiff's claim, complete and final satisfaction of the claim against defendant, or by settlement or abandonment of the action.

Citing *Polk v. Schwartz*, 166 *N.J.Super.* 292, 399 *A.*2d 1001 (App.Div.1979) and *O'Boyle v. Fairway Prod., Inc.*, 169 *N.J.Super.* 165, 404 *A.*2d 365 (App.Div.1979), the court indicates that

unless the complaint clearly recites a cause of action which, under the statute, does not permit the filing of a notice of *lis pendens*, it is not appropriate for a defendant to move directly to discharge the notice. Defendant, rather, should move either to dismiss the complaint for failure to state a claim upon which relief can be granted or move for summary judgment requesting that the notice of *lis pendens* be discharged.

Defendant further argues that the *lis pendens*, by encumbering the property, may effect his ability to conduct normal business. Defendant has the right to make an application to remove the *lis pendens* as to any individual property upon the showing of the need to do so, at which time adequate protection can be given to plaintiff regarding that particular piece of property.

Based upon the foregoing, it is the opinion of this court that the *lis pendens* is an appropriate remedy as to all of the property subject to equitable distribution and the attorney for plaintiff is directed to prepare an order in accordance with this decision.